## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

CONCEPT ENGINEERING LLC,

       Plaintiff,

    v.

PINTEREST, INC.,

       Defendant.

C.A. No. 21-1465 (MN)

### DEFENDANT PINTEREST, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO STAY LITIGATION PENDING ARBITRATION

OF COUNSEL:

Amy H. Candido
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Suite 330
San Francisco, CA 94105-1126
(415) 947-2000
acandido@wsgr.com

WILSON SONSINI GOODRICH & ROSATI, P.C.
Jennifer A. Ward (#6476)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
jward@wsgr.com

December 24, 2021

*Counsel for Defendant Pinterest, Inc.*

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................................. 1

SUMMARY OF ARGUMENT ................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 3

      A.     Plaintiff's Allegations and Use of Pinterest's Online Service. .............................. 3

      B.     Plaintiff's Consent to Pinterest's Personal and Business Terms of Service. .......... 4

      C.     The Relevant Contract Provisions. ......................................................................... 6

             1.     Pinterest's Terms ....................................................................................... 7

             2.     Pinterest's Business Terms ........................................................................ 8

ARGUMENT ............................................................................................................................... 9

I.      THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S
      CLAIMS. ......................................................................................................................... 9

      A.     Plaintiff Assented to Pinterest's Terms of Service and Arbitration
            Provision. ............................................................................................................ 10

      B.     The Arbitration Provision Delegates Questions of Arbitrability to the
            Arbitrator.............................................................................................................. 14

      C.     The Arbitration Provision's Delegation Clause Is Not Unconscionable. ............. 16

II.     THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT AND ORDER
     THAT ANY NON-ARBITRABLE CLAIMS BE BROUGHT IN THE
     NORTHERN DISTRICT OF CALIFORNIA. .............................................................. 19

CONCLUSION .......................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)...........................................................................................................9

*Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996) ...........................................................................................20

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).........................................................................................................9

*Blackmon v. O3 Insight, Inc.*,
    No. CV 2020-1014-SG,
    2021 WL 868559 (Del. Ch. Mar. 9, 2021).....................................................................16

*Bremen v. Zapata Off–Shore Co.*,
    407 U.S. 1 (1972)...........................................................................................................19

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ...........................................................................10, 15, 16

*Chemours Co. v. DowDuPont Inc.*,
    C.A. No. 2019-0351-SG,
    2020 WL 1527783 (Del. Ch. Mar. 30, 2020),
    *aff'd,* 243 A.3d 441 (Del. 2020)...................................................................................19

*Cohen v. MyLife.com, Inc.*,
    No. D076067,
    2020 WL 5756509 (Cal. Ct. App. Sept. 28, 2020) ...........................................................9

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 (N.D. Cal. Jan. 5, 2017)................................................................12

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985).......................................................................................................3, 9

*Dickey v. Ticketmaster LLC, et al.*,
    No. CV 18-9052-GW(GJSx),
    2019 WL 9096443 (C.D. Cal. Mar. 12, 2019)...............................................................18

*Dohrmann v. Intuit, Inc.*,
    823 Fed. App'x 482 (9th Cir. 2020) ..............................................................................12

*Foster v. Chesapeake Ins. Co.*,
    933 F.2d 1207 (3d Cir. 1991).........................................................................................19

*Geraci v. Uber Techs., Inc.*,
    C.A. No. N21C-07-151 CLS,
    2021 WL 5028368 (Del. Sup. Ct. Oct. 29, 2021).............................................13, 14, 16

*Gonzalez v. Citigroup*,
　　Civ. No. 09–017–SLR,
　　2009 WL 2340678 (D. Del. July 30, 2009) ............................................................17, 18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
　　139 S. Ct. 524 (2019) ..................................................................................2, 3, 10, 14, 19

*James & Jackson, LLC v. Willie Gary, LLC*,
　　906 A.2d 76 (Del. 2006) ...........................................................................................15

*James v. Global TelLink Corp.*,
　　852 F.3d 262 (3d Cir. 2017) ........................................................................................2

*Kilgore v. KeyBank, Nat'l Ass'n*,
　　718 F.3d 1052 (9th Cir. 2013) ....................................................................................9

*Liveware Publ'g, Inc. v. Best Software, Inc.*,
　　252 F. Supp. 2d 74 (D. Del. 2003) ...........................................................................16

*Loveland v. Facebook*,
　　No. 20-CV-6260-JMY,
　　2021 WL 1734800 (E.D. Pa. May 3, 2021) ..............................................................20

*Mayhan v. Sunoco, Inc.*,
　　C.A. No. 18-355-RGA,
　　2020 WL 247517 (D. Del. Jan. 16, 2020) ...............................................................1, 9

*McLellan v. Fitbit, Inc.*,
　　No. 3:16-CV-00036-JD,
　　2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) .......................................................15, 19

*Meier v. Midwest Recreational Clearinghouse, LLC*,
　　No. 210-CV-01026,
　　2010 WL 2738921 (E.D. Cal. July 12, 2010) .......................................................19, 20

*Micro Focus (US), Inc. v. Ins. Servs. Office, Inc.*,
　　No. 15-252-RGA,
　　2021 WL 4061141 (D. Del. Sept. 7, 2021) .......................................................11, 13, 14

*Mitas Endustri Sanayi Ticaret A.S. v. Valmont Indus., Inc.*,
　　No. CV 20-1285-CFC,
　　2021 WL 3169301 (D. Del. July 27, 2021) ..........................................................15, 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
　　460 U.S. 1 (1982) ....................................................................................................10

*Newell Rubbermaid Inc. v. Storm*,
　　No. 9398–VCN,
　　2014 WL 1266827 (Del. Ch. Mar. 27, 2014) .....................................................13, 14, 17

*Nguyen v. Barnes & Noble Inc.*,
　　763 F.3d 1171 (9th Cir. 2014) ...................................................................................13

iii

*Nidec Corp. v. Seagate Tech. LLC*,
    No. 21-52-RGA,
    2021 WL 3048456 (D. Del. July 20, 2021) ........................................................14, 16, 18

*Perry v. MLB Advanced Media, L.P.*,
    No. CV 18-1548 PSG,
    2018 WL 5861307 (C.D. Cal. May 30, 2018) ..........................................10, 12, 17, 18, 19

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020) .........................................................................12, 13

*Regan v. Pinger, Inc.*,
    No. 20-CV-02221-LHK,
    2021 WL 706465 (N.D. Cal. Feb. 23, 2021) .....................................................................11

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)..........................................................................................................9, 16

*Republic of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991) ...............................................................................................9

*Richardson v. Coverall N.A., Inc.*,
    811 F. App'x 100 (3d Cir. 2020) ...................................................................................10, 15

*Silfee v. Automatic Data Processing, Inc.*,
    696 F. App'x 576 (3d Cir. 2017) .........................................................................................9

*Taylor v. Shutterfly, Inc.*,
    No. 18-CV-00266-BLF,
    2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ..................................................................16

*Three Valleys Mun. Water Dist. v . E.F. Hutton & Co.*,
    925 F.2d 1136 (9th Cir. 1991) ...........................................................................................11

*Tompkins v. 23andMe, Inc.*,
    No. 5:13-CV-05682-LHK,
    2014 WL 2903752 (N.D. Cal. June 25, 2014),
    *aff'd,* 840 F.3d 1016 (9th Cir. 2016).........................................................................14, 17

*United States v. Drew*,
    259 F.R.D. 449 (C.D. Cal. 2009) .......................................................................................20

*United States v. MacEwan*,
    445 F.3d 237 (3d Cir. 2006)................................................................................................9

*Vertiv Corp. v. Svo Bldg. One, LLC*,
    No. 1:18-cv-01776-RGA,
    2019 WL 1454953 (D. Del. Apr. 2, 2019)...........................................................1, 10, 15, 16

*Wells v. Merit Life Ins. Co.*,
    671 F. Supp. 2d 570 (D. Del. 2009).......................................................................10, 17, 18

*Willis v. Fitbit, Inc.*,
    No. 19-cv-01377-DMS
    (WVG), 2020 WL 417943 (S.D. Cal. Jan. 27, 2020) .....................................................16, 18

iv

**Statutes**

9 U.S.C. § 1.................................................................................................1, 9, 10, 14, 17

17 U.S.C. § 512(c) ......................................................................................................3

17 U.S.C. § 1201 .........................................................................................................4

17 U.S.C § 1202 ..........................................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(6)...............................................................................................1

## NATURE AND STAGE OF PROCEEDINGS

On October 19, 2021, Plaintiff Concept Engineering LLC ("Concept Engineering" or "Plaintiff") filed suit against Pinterest, Inc. ("Pinterest"), alleging direct and contributory copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA") relating to content uploaded to Pinterest's online platform, which Plaintiff registered to use pursuant to two sets of Pinterest's Terms of Service (the "Terms" and "Business Terms," collectively, the "Terms of Service").  *See* D.I. 1.  Pursuant to those Terms of Service, the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), and Fed. R. Civ. P. 12(b)(6), Pinterest moves to compel arbitration and dismiss Plaintiff's Complaint, or in the alternative, to stay these proceedings pending arbitration.

## SUMMARY OF ARGUMENT

The Court should grant Pinterest's motion to compel arbitration and dismiss Plaintiff's Complaint because Plaintiff expressly agreed to arbitrate all claims arising out of or relating to Pinterest's service in its acceptance of Pinterest's Terms of Service when it created its "personal" account and subsequently converted it to a "business" account with Pinterest.  On a motion to compel arbitration, the Court's role is limited to determining:  "(1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of the agreement."  *Mayhan v. Sunoco, Inc.*, C.A. No. 18-355-RGA, 2020 WL 247517, at *2 (D. Del. Jan. 16, 2020) (citation omitted).  However, where there is "clear and unmistakable" evidence that the parties agreed to have the arbitrator decide whether a dispute falls within the scope of the agreement – as there is here – "the court must abide by that decision 'even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.'" *Vertiv Corp. v. Svo Bldg. One, LLC*, No. 1:18-cv-01776-RGA, 2019 WL 1454953, at *2 (D. Del.

Apr. 2, 2019) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)).

*First*, the arbitration agreement in the Terms of Service is valid and enforceable, as Plaintiff expressly agreed to the Terms of Service when it registered for its accounts with Pinterest. Plaintiff objectively manifested its assent to be bound by the Terms; specifically, it created a personal account, which required it to click a "Create Account" button directly beneath a bold hyperlink to the Terms expressly indicating that, by creating an account, Plaintiff was agreeing to be bound by the Terms. Plaintiff agreed yet again to arbitrate when it converted its personal account to a business account, which required Plaintiff to check a box under a window with the Business Terms stating "I agree to the Business Terms of Service" before Plaintiff was able to open its business account, explicitly manifesting its acceptance of the Business Terms.

*Second*, the Terms of Service agreed to by Plaintiff clearly and unmistakably delegate the issue of arbitrability to the arbitrator. Both the Terms and Business Terms explicitly provide for arbitration pursuant to the American Arbitration Association's Commercial and Consumer Arbitration Rules (collectively, "AAA Rules"), which the Third and Ninth Circuits agree constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.

*Third*, because the parties agreed to delegate arbitrability to the arbitrator, the Court is only permitted to decide whether that delegation clause itself is unconscionable. Here, the delegation clause is not unconscionable, as it does not reflect an unduly one-sided agreement that "shocks the conscience."

*Fourth*, as the issues here, including arbitrability itself, are subject to the parties' binding arbitration agreement, this case is subject to dismissal. Dismissal is particularly warranted here

because the parties agreed to litigate any non-arbitrable federal claims in the Northern District of California by virtue of the valid and enforceable forum-selection clause in the Terms of Service.

Thus, because the parties (1) entered into a valid arbitration agreement and (2) agreed to arbitrate any dispute arising out of, in connection with or relating to the Terms of Service, including any dispute about which claims are arbitrable, there is nothing left for this Court to do but "respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 528. Consistent with established law, the Court must stay or dismiss this lawsuit without prejudice and "direct the parties to proceed to arbitration[.]" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## STATEMENT OF FACTS

### A.   Plaintiff's Allegations and Use of Pinterest's Online Service.

Pinterest is a popular online service that allows its users to save (or "pin") digital images to virtual bulletin boards on Pinterest's platform. D.I. 1 ¶ 16. Pinterest provides its users a platform on which to search and find content for inspiration, as well as to promote and market their work. Plaintiff has been a user of Pinterest since September 21, 2012. December 22, 2021 Declaration of Ryan Probasco ("Probasco Decl.") ¶ 6; *see also, e.g.*, D.I. 1 ¶ 44. Since registering as a Pinterest user, Plaintiff has uploaded numerous architectural works, house plans and renderings to Pinterest, many of which are among Plaintiff's list of federally registered copyrighted works provided as Exhibit A to its Complaint. Probasco Decl. ¶ 7.

Pinterest respects the intellectual property rights of others and expects users on Pinterest to do the same. Accordingly, in keeping with the DMCA, Pinterest responds promptly to notices of alleged infringement from copyright holders and follows DMCA takedown procedures regarding the removal of disputed content from its service. *See* D.I. 1 ¶¶ 37-40; *see also* 17 U.S.C. § 512(c) (detailing safe-harbor and takedown-request procedures). Compliance with these safe-harbor

provisions of the DMCA shields online services from copyright claims arising from users'
activities.

Plaintiff's allegations, which have limited relevance to the instant motion, purport to relate
to Pinterest's DMCA takedown procedures and the functionality of Pinterest's public platform,
through which Plaintiff alleges Pinterest "has facilitated and enabled" infringement of Plaintiff's
alleged copyrighted works.  *See, e.g.*, D.I. 1 ¶ 18.  Plaintiff seeks relief for claims of direct and
contributory copyright infringement, circumvention of copyright protection systems in violation
of 17 U.S.C. § 1201, *et seq.*, and removal of copyright management information in violation of 17
U.S.C § 1202.  D.I. 1 ¶¶ 57-100.[1]

**B.    Plaintiff's Assent to Pinterest's Personal and Business Terms of Service.**

Before anyone can use Pinterest, they must create an account and agree to Pinterest's Terms
of Service.  Probasco Decl. ¶ 8.  This has been true since Pinterest launched in March 2010.  *Id.*

Plaintiff first created its Pinterest account on September 21, 2012, by registering with its
email address.  *Id.* ¶¶ 6, 9.  At that time, Plaintiff was required to proceed through the screen
reproduced below in two parts, which contained the following notice directly above the red "Create
Account" button that Plaintiff had to click to create its account:  "By creating an account, I accept
Pinterest's **Terms of Service** and **Privacy Policy.**"

---

[1] While not relevant to this motion, like any user of Pinterest, Plaintiff's agreement to Pinterest's
Terms of Service (described herein) included providing Pinterest an intellectual property license
to the content, including images, that Plaintiff posted or otherwise made available on Pinterest.
*See, e.g.*, Probasco Decl. Ex. A at 2.  As a Pinterest user, Plaintiff is bound by the Terms of Service
(including the arbitration provision described herein), and Plaintiff's efforts to ignore them in its
Complaint does not change that.



*Id.* ¶ 9 (emphasis in original).  At all times, the bolded "**Terms of Service**" was a hyperlink to a full copy of Pinterest's Terms, and would become highlighted in red font with an underline when a user hovered their cursor over the link, as depicted below.  *Id.* ¶ 10 (emphasis in original).



On or about November 14, 2012, Pinterest introduced accounts specifically for businesses using Pinterest, providing them with a host of resources to help them succeed on Pinterest.  *Id.* ¶ 8; December 22, 2021 Declaration of Eric Wahlgren ("Wahlgren Decl.") ¶ 5.  Pinterest informed business users how to convert their existing accounts to business accounts and provided a new set of Business Terms to govern business accounts.  Wahlgren Decl. ¶ 5.  On August 23, 2013, Plaintiff converted its personal account to a business account.  *Id.* ¶ 6.  This required Plaintiff to fill out a form with its business information and to interact with a window where Plaintiff could

5

scroll through and review the entirety of Pinterest's Business Terms, as well as print the Business

Terms for its review and/or records, as depicted below.  Probasco Decl. ¶¶ 19-21.[2]



*Id.* ¶ 20.  As shown above, Plaintiff was required to accept the Business Terms by checking the

box to the right of "Accept Terms" and next to the following statement:  "I agree to the Business

Terms of Service and Privacy Policy."  *Id.*  Unless Plaintiff **both** checked the box indicating its

agreement to the Business Terms **and** clicked the Create Account button, Pinterest's system would

not have allowed Plaintiff to convert its personal account into a business account, as it did.  *Id.*

### C.    The Controlling Arbitration Provisions.

At all times since its launch, the use of Pinterest has been governed by Terms of Service.

*Id.* ¶ 8.  Plaintiff's use of Pinterest was governed by the Terms from September 21, 2012 until it

converted to a business account on August 23, 2013, and the Business Terms thereafter to the

present.  *Id.* ¶ 11.  At all times, Pinterest's Terms and Business Terms have required arbitration of

disputes by the American Arbitration Association ("AAA").  *Id.*; Wahlgren Decl. ¶ 7.

---

[2] Users could scroll through the Business Terms in the "Terms of Service" window to review them
in their entirety before accepting and agreeing to them.  *See* Probasco Decl. ¶ 21.

1.    Pinterest's Terms

On September 21, 2012, the Terms that Plaintiff agreed to when it opened its account (the

"September 21, 2012 Terms") contained the following excerpted arbitration provision:

> In the unlikely event that Pinterest has not been able to resolve a dispute it has with
> you after attempting to do so informally, we each agree to resolve any claim,
> dispute, or controversy (excluding claims for injunctive or other equitable relief)
> arising out of or in connection with or relating to these Terms, or the breach or
> alleged breach thereof (collectively, "Claims"), by binding arbitration by the
> American Arbitration Association ("AAA") under the Commercial Arbitration
> Rules and Supplementary Procedures for Consumer Related Disputes then in effect
> for the AAA, except as provided herein.

Probasco Decl. ¶¶ 12-13; *id.* Ex. A at 10 (Section 11(a)).  The September 21, 2012 Terms also

contained the following choice of law provision:

> These Terms shall be governed by the internal substantive laws of the State of
> California, without respect to its conflict of laws principles.

Probasco Decl. ¶ 14; *id.* Ex. A at 10 (Section 11(b)).

Pinterest's Terms were revised on November 14, 2012, and February 12, 2013, and

remained unchanged from February 12, 2013 through August 23, 2013, when Plaintiff converted

its personal account to a business account.  Probasco Decl. ¶¶ 15-16.  At all times from November

14, 2012 through August 23, 2013, Pinterest's Terms contained the following excerpted arbitration

provision:

> If Pinterest has not been able to resolve the dispute with you informally, we each
> agree to resolve any claim, dispute, or controversy (excluding claims for injunctive
> or other equitable relief) arising out of or in connection with or relating to these
> Terms by binding arbitration by the American Arbitration Association ("AAA")
> under the Commercial Arbitration Rules and Supplementary Procedures for
> Consumer Related Disputes then in effect for the AAA, except as provided herein.

Probasco Decl. ¶ 17; *id.* Ex. B at 7 (Section 10); *id.* Ex. C at 5 (Section 10).

At all times from November 14, 2012 through August 23, 2013, the Pinterest Terms also

contained the following choice of law provision:

These Terms shall be governed by the law of the State of California, without respect to its conflict of laws principles.

Probasco Decl. ¶ 18; *id.* Ex. B at 7 (Section 11); *id.* Ex. C at 5 (Section 11).

        2.      <u>Pinterest's Business Terms</u>

As described above, on August 23, 2013, Plaintiff converted its personal account to a business account and agreed to Pinterest's Business Terms.  The Business Terms in effect on August 23, 2013 (the "August 23, 2013 Business Terms") contained the following excerpted arbitration provision:

> If Pinterest has not been able to resolve the dispute with you informally, we each agree to resolve any claim, dispute, or controversy (excluding claims for injunctive or other equitable relief) arising out of or in connection with or relating to these Terms by binding arbitration by the American Arbitration Association ("AAA") under the Commercial Arbitration Rules and Supplementary Procedures for Consumer Related Disputes then in effect for the AAA, except as provided herein.

Wahlgren Decl. ¶ 8; *id.* Ex. A at 5 (Section 11).  The August 23, 2013 Business Terms also contained the following choice of law and forum selection provision:

> These Terms shall be governed by the laws of the State of California, without respect to its conflict of laws principles.  We each agree to submit to the personal jurisdiction of a state court located in Santa Clara County, California or the United States District Court for the Northern District of California, for any actions not subject to Section 11 (Arbitration).

Wahlgren Decl. ¶ 9; *id.* Ex. A at 6 (Section 12).

While there have been modifications to Pinterest's Business Terms since August 23, 2013, the Business Terms have always contained and still contain an arbitration provision requiring the arbitration of "any claim, dispute, or controversy (excluding claims for injunctive or other equitable relief) arising out of or in connection with or relating to these Terms" by or through binding arbitration by the AAA under either the AAA's Commercial Arbitration Rules and Supplementary Procedures for Consumer Related Disputes then in effect or the AAA's Consumer Arbitration Rules then in effect.  Wahlgren Decl. ¶ 10.

## ARGUMENT

**I.     THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforcement of arbitration agreements involving interstate commerce.  *Am. Express Co. v. Italian Colors Rest.,* 570 U.S. 228, 232-33 (2013).[3]  "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344 (2011).  "The FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration has been signed.'" *Kilgore v. KeyBank, Nat'l Ass'n,* 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter,* 470 U.S. at 218); *see also Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017).  "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Repub. of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

"The FAA limits the role of courts to determine:  (1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of the agreement." *Mayhan*, 2020 WL 247517, at *2.  However, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  "If a court finds that parties clearly and unmistakably agreed to delegate the decision of arbitrability to the arbitrator, the court must abide by that decision" and the second prong of the

---

[3] Pinterest's services are provided exclusively through the internet, which "is an instrumentality and channel of interstate commerce."  *United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006); *see also Cohen v. MyLife.com, Inc.*, No. D076067, 2020 WL 5756509, at *3 (Cal. Ct. App. Sept. 28, 2020) (applying FAA to services provided over the internet).

inquiry "is for the arbitrator." *Vertiv*, 2019 WL 1454953, at *2-4. In such circumstances, the Supreme Court has mandated that the Court cannot decide the second question "'even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.'" *Id.* at *2 (quoting *Henry Schein*, 139 S. Ct. at 529). Moreover, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1982).

Here, Pinterest's Terms of Service clearly and unmistakably delegate the decision of arbitrability to the arbitrator because Plaintiff and Pinterest unequivocally agreed to binding arbitration under AAA Rules which give the arbitrator the power to decide the arbitrability of any claim. Both the Third and Ninth Circuits hold that "the incorporation of the AAA Rules in [an] arbitration clause constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability." *Richardson v. Coverall N.A., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Under such circumstances, the Supreme Court is clear that a court may not decide questions of arbitrability. *Henry Schein*, 139 S. Ct. at 530.

### A.     Plaintiff Assented to Pinterest's Terms of Service and Arbitration Provision.

Courts determine whether parties have entered into a valid agreement to arbitrate by "applying 'ordinary state law principles that govern the formation of contracts.'" *Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 573 (D. Del. 2009) (finding arbitration provision valid and enforceable) (citation omitted). In California, "mutual assent is the key to contract formation."[4]

---

[4] Because the parties agreed to apply the substantive laws of California, *see, e.g.*, Wahlgren Decl. ¶ 9, California law applies. *See, e.g.*, *Vertiv*, 2019 WL 1454953, at *2 (applying California law where the relevant agreement "provide[d] for the application of California law"); *see also Perry v. MLB Advanced Media, L.P.*, No. CV 18-1548 PSG (GJSx), 2018 WL 5861307, at *4, n.2 (C.D. Cal. May 30, 2018) (applying both the choice of law in the agreement and the law of the forum

*Regan v. Pinger, Inc.*, No. 20-CV-02221-LHK, 2021 WL 706465, at *4 (N.D. Cal. Feb. 23, 2021) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)). Similarly, in Delaware, "a contract 'comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms.'" *Micro Focus (US), Inc. v. Ins. Servs. Office, Inc.*, No. 15-252-RGA, 2021 WL 4061141, at *2 (D. Del. Sept. 7, 2021) (agreements plaintiff had signed were valid "clickwrap" agreements and therefore enforceable) (citation omitted).  Here, Plaintiff clearly manifested its assent to Pinterest's Terms and Business Terms when signing up for its personal account and converting to its business account.

*First*, Plaintiff assented to Pinterest's Terms and the arbitration provision therein when it created its personal account on September 21, 2012.  As described above, Plaintiff was provided with clear notice of the Terms with the statement "By creating an account, I accept Pinterest's **Terms of Service** and **Privacy Policy**" directly above the "Create Account" button.  *See* Probasco Decl. ¶¶ 9-10 (emphases in original).  The Terms of Service hyperlink, which was bolded and highlighted in red, underlined text when hovered over, provided Plaintiff with direct access to the full Terms and "provided users with sufficient notice to manifest mutual assent to the website's terms of service."  *Regan*, 2021 WL 706465, at *6 (finding terms of service enforceable where user was presented with hyperlinked notice "By registering, I agree to Sideline's Terms and Conditions" next to "Create Account" button).

Courts routinely enforce arbitration clauses in terms of service where the user was put on inquiry notice of the website's terms of service, such as through a hyperlink, and advised that he

which yielded "consistent results").  Regardless, California and Delaware law are in accord with regards to this motion; thus, while we believe California law should apply, both are addressed.

or she is agreeing to the terms of service by creating an account, registering or signing up.  *See, e.g., Dohrmann v. Intuit, Inc.*, 823 Fed. App'x 482, 483-84 (9th Cir. 2020) (enforcing arbitration clause in terms of use where user was required to click a "Sign In" button directly under statement "By clicking Sign In, you agree to the Turbo Terms of Use"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585-87 (N.D. Cal. 2020) (finding Plaintiffs' on "inquiry notice" of DoorDash's T&C and enforcing its arbitration clause where sign-in page included hyperlink to T&C); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 987 (N.D. Cal. Jan. 5, 2017) (terms of service were enforceable where plaintiff was "presented with the notice: 'By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy'" and could not have created his account without "navigat[ing] through the screen containing this notice"); *Perry*, 2018 WL 5861307, at *6 (enforcing arbitration agreement because "Plaintiff's acceptance of the Terms of Use—specifically, her clicking the 'Buy & Accept Terms' button at the time she purchased the Subscription, was sufficient to bind her to the arbitration provision").[5]

The Terms, which Plaintiff had to accept before creating its personal account, have at all times required the parties to resolve "any claim, dispute, or controversy (excluding claims for injunctive or other equitable relief) arising out of or in connection with or relating to these Terms . . . by binding arbitration by the American Arbitration Association ('AAA') under the Commercial Arbitration Rules and Supplementary Procedures for Consumer Related Disputes

---

[5] The Third Circuit addressed this body of caselaw in *James v. Global TelLink Corp.*, noting that where, as here, website users are presented with a "hyperlink to the terms [that is] reasonably conspicuous on the webpage" and given "explicit textual notice that continued use will act as a manifestation of the user's intent to be bound," the agreement is more likely to be enforceable, as compared to a so-called "browsewrap agreement" where a company's terms are simply "posted on a website via a hyperlink at the bottom of the screen" and the user is not required "to expressly manifest assent."  852 F.3d 262, 267 (3d Cir. 2017) (finding that prisoners signing up for telephone service telephonically not bound by terms of service that were only available online when they did not have access to the Internet).

then in effect for the AAA. . . ."  Probasco Decl. ¶¶ 13, 17.  As such, Plaintiff agreed to the Terms and the arbitration provision when it created its personal account.

*Second*, Plaintiff manifested its assent to Pinterest's Business Terms, including arbitration of all claims by the AAA, when it converted its personal account to a business account.  The process that Plaintiff followed to convert its personal account to a business account constitutes an enforceable "clickwrap" agreement, which is an "online agreement that requires a 'webpage user [to] manifest assent to the terms of a contract by clicking an 'accept' button in order to proceed.'" *Geraci v. Uber Techs., Inc.*, C.A. No. N21C-07-151 CLS, 2021 WL 5028368, at *2 (Del. Sup. Ct. Oct. 29, 2021) (citing *Newell Rubbermaid Inc. v. Storm*, No. 9398–VCN, 2014 WL 1266827, at *1 (Del. Ch. Mar. 27, 2014)); *see also, e.g., Micro Focus*, 2021 WL 4061141, at *6; *Peter*, 445 F. Supp. 3d at 585 (noting "courts generally enforce" online agreements "in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use") (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014)).  Online agreements such as these "are routinely recognized by courts and are enforceable" under both Delaware and California law.  *Geraci*, 2021 WL 5028368, at *2; *Peter*, 445 F. Supp. 3d at 585.

To convert its account, Plaintiff had to acknowledge its assent to the Business Terms by clicking a box next to the statement "I agree to the Business Terms of Service and Privacy Policy." Probasco Decl. ¶ 20.  Plaintiff could not have created its business account without checking this box.  *Id.*  At that time and at all times thereafter, the Business Terms have required the parties to arbitrate "any claim, dispute or controversy (excluding claims for injunctive or other equitable relief) arising out of or in connection with or relating to these Terms" by or through "binding arbitration by the American Arbitration Association ('AAA')[.]"  Wahlgren Decl. ¶¶ 8-10.

"Courts consider clicking to accept a 'clickwrap' agreement as a manifestation of assent to

the contract." *Micro Focus*, 2021 WL 4061141, at *6.  In *Geraci v. Uber Techs.*, for example, the plaintiff was required to click a button stating "YES, I AGREE" to Uber's terms of service to create and continue to use an account on the platform.  2021 WL 5028368, at *2.  The Superior Court of Delaware found that by clicking the box and creating the account, plaintiff assented to Uber's terms of service, including the arbitration agreement, because "click wrap agreements, such as the one present in this case, are enforceable[,]" and therefore, "Plaintiff entered into a valid and enforceable arbitration agreement." *Id.*  Pinterest's Business Terms, and the arbitration provision therein, are similarly valid and enforceable.  *See id.*; *see also Newell*, 2014 WL 1266827, at *7 (upholding arbitration clause contained within clickwrap agreement); *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *10 (N.D. Cal. June 25, 2014), *aff'd,* 840 F.3d 1016 (9th Cir. 2016)

Because Plaintiff agreed to binding arbitration of all claims against Pinterest by the AAA not once, but twice, the Court should grant Pinterest's motion to dismiss in favor of the arbitrator resolving this dispute, including any disputes regarding the arbitrability of Plaintiff's claims.

## B. The Arbitration Provision Delegates Questions of Arbitrability to the Arbitrator.

Under the FAA, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 528.  As such, where parties have "clearly and unmistakably" delegated the question of arbitrability, any dispute as to whether the alleged claims fall within the scope of the agreement is solely within the arbitrator's jurisdiction.  *See id.*; *see also, e.g.*, *Nidec Corp. v. Seagate Tech. LLC*, No. 21-52-RGA, 2021 WL 3048456, at *2 (D. Del. July 20, 2021) (finding that, where there is a valid delegation clause, the court is not permitted to determine whether claims are subject to arbitration).  Here, the parties have clearly and unmistakably expressed their intent to delegate

threshold arbitrability questions to the arbitrator by the express incorporation of the AAA's Commercial and Consumer Rules into Pinterest's Terms and Business Terms.

The Terms and Business Terms agreed to by Plaintiff have, at all times, specifically incorporated the AAA Rules. *See* Probasco Decl. ¶¶ 13, 17; Wahlgren Decl. ¶¶ 8, 10. Both the Commercial and Consumer AAA Rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." R-7, AAA Commercial Arbitration Rules and Mediation Procedures (2013); R-14, AAA Consumer Arbitration Rules (2014); *see also Vertiv*, 2019 WL 1454953, at *2 ("The AAA Rules provide that the arbitrator shall resolve arbitrability.") (applying California law). Thus, the incorporation of the AAA Rules into Pinterest's Terms of Service "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability[,]" *Brennan*, 796 F.3d at 1130, and "renders them binding on the Parties, as if the rules are part of the contract." *Vertiv*, 2019 WL 1454953, at *2; *see also McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *3 (N.D. Cal. Oct. 11, 2017) (finding incorporation of AAA Rules into terms of service clear and unmistakable intent to delegate arbitrability to arbitrator).[6]

Plaintiff agreed to the incorporation of the AAA Rules not only when it created its personal account and assented to the Terms, but again when it converted to a business account and expressly

---

[6] Delaware law dictates the same result. *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80 (Del. 2006) (noting that Delaware has adopted "the majority federal view that reference to the AAA rules evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator" where "the arbitration clause generally provides for arbitration of all disputes."); *see also Mitas Endustri Sanayi Ticaret A.S. v. Valmont Indus., Inc.*, No. CV 20-1285-CFC, 2021 WL 3169301, at *2 (D. Del. July 27, 2021) ("The Third Circuit has held that the incorporation of the AAA Rules in an arbitration clause 'constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability.'") (quoting *Richardson*, 811 F. App'x at 103).

confirmed it agreed to be bound by the Business Terms. Under controlling precedent in both Delaware and California, this requires that the arbitrator decide the arbitrability of Plaintiff's claims and is dispositive of this motion. *See, e.g., Taylor v. Shutterfly, Inc.*, No. 18-CV-00266-BLF, 2018 WL 4334770, at *6 (N.D. Cal. Sept. 11, 2018) (finding incorporation of AAA Rules into clickwrap agreement clearly and unmistakably delegated arbitrability issues to the arbitrator); *Geraci*, 2021 WL 5028368, at *2 ("Plaintiff agreed to the arbitration agreements by assenting to the terms by clicking 'YES, I AGREE' when prompted to, so he agreed to arbitrate questions of arbitrability."); *Nidec*, 2021 WL 3048456, at *2.[7] The Complaint should be dismissed or stayed pending arbitration, including arbitration of any disputes regarding arbitrability.

## C. The Arbitration Provision's Delegation Clause Is Not Unconscionable.

Where the parties to an arbitration agreement have clearly and unmistakably delegated questions of arbitrability to an arbitrator, "the only remaining question is whether the particular agreement ***to delegate*** arbitrability—the Delegation Provision—is itself unconscionable." *Willis v. Fitbit, Inc.,* No. 19-cv-01377-DMS (WVG), 2020 WL 417943, at *4 (S.D. Cal. Jan. 27, 2020) (emphasis added) (citing *Brennan*, 796 F.3d. at 1132). When considering an unconscionability challenge to a delegation provision, the court must only consider arguments "specific to the delegation provision." *Rent-A-Center*, 561 U.S. at 73. Unless the delegation provision itself is

---

[7] The exclusion for injunctive or equitable relief in the arbitration provision—*see, e.g.*, Probasco Decl. ¶ 13 (referring "any claim, dispute, or controversy (excluding claims for injunctive or other equitable relief) arising out of or in connection with or relating to these Terms" to binding arbitration)—does not remove the question of whether Plaintiff's claims are arbitrable from the sole purview of the arbitrator. *See, e.g., Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 82-83 (D. Del. 2003) (equitable relief carveout did not prevent arbitration where it would otherwise "allow a specific exception in the arbitration clause to swallow the rest of the rights in that clause"); *Blackmon v. O3 Insight, Inc.*, No. CV 2020-1014-SG, 2021 WL 868559, at *3 (Del. Ch. Mar. 9, 2021) (finding equitable relief "carveout" not "so obviously broad and substantial as to overcome the parties' agreement to use arbitration under AAA Rules . . . ."); *see also Vertiv*, 2019 WL 1454953, at *2 (where AAA terms incorporated into agreement, "any disagreement as to the arbitrability of an issue must be decided by the arbitrator").

unconscionable, as opposed to the arbitration agreement or the container agreement as a whole, the court must treat the delegation provision as valid and enforceable under the FAA.  *Id.* at 72.

In California, "[u]nconscionability has 'both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'"  *Tompkins*, 840 F.3d at 1023 (citation omitted).  To be substantively unconscionable, a term must "be so one-sided that it shocks the conscience."  *Perry*, 2018 WL 5861307, at *6 (finding no aspects of arbitration agreement in online terms of service "shock[ed] the conscience," though the agreement forced plaintiff to litigate in a forum far from home, waived her right to punitive damages, and limited her ability to recover fees) (citation omitted).  Delaware's unconscionability test similarly addresses:  (1) whether there was unfairness due to "lack of meaningful choice;" and (2) whether the agreement by its terms "shocks the conscience."  *Wells*, 671 F. Supp. 2d at 573; *see also Gonzalez v. Citigroup*, Civ. No. 09–017–SLR, 2009 WL 2340678, at *2 (D. Del. July 30, 2009) (same).  The delegation provision here is neither procedurally nor substantively unconscionable.

*First*, the delegation provision is not procedurally unconscionable.  There is no "evidence of undue surprise or oppression[,]" as the arbitration provision and delegation clause in the Terms were "accessible through the hyperlink that was located [just above the 'Create Account'] button, which Plaintiff was required to click to [create its account]."  *Perry*, 2018 WL 5861307, at *5 (finding such notice was not procedurally unconscionable).  The same is true of the delegation provision in the Business Terms, as Plaintiff was required to click a box to show "I agree to the Business Terms of Service and Privacy Policy" in order to convert its personal account to a business account.  *See, e.g.*, *Newell*, 2014 WL 1266827, at *7 (finding agreement to arbitrate in clickwrap agreement not unconscionable).  The fact that both the Terms and Business Terms were

provided as "take-it-or-leave-it" provisions for the use of Pinterest's online service do not render them procedurally unconscionable where, as here, nothing prevented Plaintiff from reading the agreement, and Plaintiff was not subject to any other unconscionable behavior like "deceptive or high-pressure tactics." *See, e.g., Perry*, 2018 WL 5861307, at *5 (finding that "a take-it-or-leave-it provision combined with unequal bargaining power and sophistication [in an online terms of service] do not 'demonstrate any oppression beyond what is inherent in any adhesion contract'" and is not procedurally unconscionable without other evidence of unconscionability); *Wells*, 671 F. Supp. 2d at 574 ("Unequal bargaining power, without more, is insufficient to hold an arbitration agreement unconscionable."); *Gonzalez*, 2009 WL 2340678, at *2 (noting that "[s]uperior bargaining power alone without the element of unreasonableness does not permit a finding of unconscionability or unfairness.").

*Second*, the delegation provision in the Terms and Business Terms is not substantively unconscionable.  As an initial matter, both parties are equally bound by the delegation provision. *See, e.g.*, Wahlgren Decl. ¶ 8 ("***we each agree*** to resolve any claim, dispute, or controversy . . . by binding arbitration . . . .") (emphasis added).  As such, Plaintiff cannot show that such a provision "unreasonably favors" Pinterest.  *See Wells*, 671 F. Supp. 2d at 575 (finding arbitration provision not unconscionable because both parties agreed to arbitrate, and as such, each had equally "'relinquished much' of [their] right to have a court decide the merits of [the] dispute").  Furthermore, the incorporation of a delegation provision, in particular through the incorporation of the AAA Rules, is common in arbitration agreements, and such delegation clauses are routinely upheld.  *See, e.g.*, *Nidec*, 2021 WL 3048456, at *2 (upholding delegation clause drafted into agreement); *Dickey v. Ticketmaster LLC, et al.*, No. CV 18-9052-GW(GJSx), 2019 WL 9096443, at *8 (C.D. Cal. Mar. 12, 2019) (same); *Willis*, 2020 WL 417943, at *3 (upholding delegation

clause incorporated into terms of service through inclusion of AAA Rules); *McLellan*, 2017 WL 4551484, at *3 (same).   Thus, this term is not so one-sided or "so extreme as to appear unconscionable according to the mores and business practices of the time and place" such that it "shock[s] the conscience." *Chemours Co. v. DowDuPont Inc.*, C.A. No. 2019-0351-SG, 2020 WL 1527783, at *12 (Del. Ch. Mar. 30, 2020), *aff'd*, 243 A.3d 441 (Del. 2020); *see also Perry*, 2018 WL 5861307, at *6 ("A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience.").

Thus, the delegation provision in the Terms and Business Terms is not unconscionable and should be enforced by the Court.

## II.   THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT AND ORDER THAT ANY NON-ARBITRABLE CLAIMS BE BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA.

The Supreme Court is clear that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.   In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529.   Where, as here, the parties have expressly delegated arbitrability to the arbitrator, it is appropriate for the Court to grant a motion to compel and dismiss the complaint.   *See Mitas Endustri*, 2021 WL 3169301, at *2 (granting motion to compel and dismissing complaint where parties agreed to delegate arbitrability to arbitrator by incorporation of AAA Rules into agreement).

Dismissal is also appropriate given the parties' selection of California as the forum for any non-arbitrable disputes.   "Forum-selection clauses are 'prima facie valid' and will be enforced unless shown to be 'unreasonable' under the circumstances." *See Meier v. Midwest Recreational Clearinghouse, LLC*, No. 210-CV-01026, 2010 WL 2738921, at *2 (E.D. Cal. July 12, 2010) (quoting *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)); *see also Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991).   "This 'unreasonable' exception should be narrowly

19

construed," and turns on whether the forum-selection clause's "'incorporation into the contract was the result of fraud, undue influence, or overwhelming bargaining power.'" *Meier*, 2010 WL 2738921, at *2 (quoting *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 325 (9th Cir. 1996)).

The Terms and Business Terms agreed to by Plaintiff contain a clause selecting "the United States District Court for the Northern District of California, for any actions [brought under federal law] not subject to [the arbitration provision]." *See, e.g.*, Wahlgren Decl. ¶ 9. Forum-selection clauses such as these contained within clickwrap agreements "have routinely been upheld by circuit and district courts." *Meier*, 2010 WL 2738921, at *2 (quoting *United States v. Drew,* 259 F.R.D. 449, 462 (C.D. Cal. 2009)); *see also Loveland v. Facebook*, No. 20-CV-6260-JMY, 2021 WL 1734800, at *5 (E.D. Pa. May 3, 2021) ("Forum selection clauses appearing in internet agreements are enforceable."). It is indisputable that Plaintiff's voluntary acceptances of Pinterest's Terms of Service in connection with its use of Pinterest's online platform were not the result of fraud, undue influence, or duress. *See, e.g., Loveland*, 2021 WL 1734800, at *5 (noting that while Facebook terms of service were "a contract of adhesion[,]" plaintiffs were "under no obligation or duress" when signing up for the free online service).

As such, to the extent Plaintiff disputes the arbitrability of its claims and the arbitrator finds any of those claims non-arbitrable, any such claims should properly proceed before the Northern District of California, not this Court. Accordingly, the Court should dismiss the Complaint and order that any non-arbitrable federal claims should be filed in the Northern District of California.

## CONCLUSION

For the foregoing reasons, Pinterest respectfully requests that the Court enter an Order to compel arbitration and dismiss Plaintiff's Complaint, or in the alternative, to stay these proceedings pending arbitration.

Dated:  December 24, 2021

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI, P.C.

OF COUNSEL:

/s/ Jennifer A. Ward
Jennifer A. Ward (#6476)

Amy H. Candido
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Suite 330
San Francisco, CA 94105-1126
(415) 947-2000
acandido@wsgr.com

222 Delaware Avenue, Suite 800
Wilmington, DE  19801
(302) 304-7600
jward@wsgr.com

Counsel for Defendant Pinterest, Inc.