**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CONCEPT ENGINEERING LLC,

     Plaintiff,

  v.           Case No. 21-01465-MN

PINTEREST, INC.

     Defendant.

---

**PLAINTIFF CONCEPT ENGINEERING'S ANSWERING BRIEF**
**IN OPPOSITION TO PINTEREST'S MOTION TO COMPEL ARBITRATION**

Daniel A. O'Brien (Del. Bar No. 4897)
VENABLE LLP
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone:  (302) 298-3535
Facsimile:  (302) 298-3550
Email:  DAO'Brien@Venable.com

Meaghan H. Kent
Martin L. Saad
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 344-4000
Facsimile:  (202) 344-8300
Email:  MHKent@Venable.com
Email:  MLSaad@Venable.com

*Counsel for Plaintiff Concept Engineering LLC*

## TABLE OF CONTENTS

Page

INTRODUCTION .......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

STANDARD................................................................................................................... 3

ARGUMENT .................................................................................................................. 4

   I.   PINTEREST, INC. IS NOT PARTY TO THE TERMS OF SERVICE AND
      CANNOT ENFORCE THE ARBITRATION PROVISION AGAINST
      CONCEPT ENGINEERING. ............................................................................. 5

   II.  CONCEPT ENGINEERING'S CLAIMS ARE EXCLUDED FROM
      ARBITRATION AND SHOULD PROCEED IN THIS COURT..................................... 9

   III. THE ASSERTED CLAIMS DO NOT FALL WITHIN THE SCOPE OF THE
      TERMS OF SERVICE. ...................................................................................... 12

   IV. THE TERMS OF SERVICE DO NOT CLEARLY AND UNMISTAKABLY
      DEMONSTRATE THAT ARBITRABILITY OF CONCEPT ENGINEERING'S
      CLAIMS SHOULD BE DECIDED BY ARBITRATOR. ............................................. 16

   V.  THE ARBITRATION PROVISION IS UNCONSCIONABLE IF THE
      ASSERTED CLAIMS ARE COVERED. ...................................................................... 18

   VI. CONCEPT ENGINEERING'S CLAIMS ARE NOT SUBJECT TO THE TERMS
      OF SERVICE VENUE PROVISION AND SHOULD REMAIN IN THIS
      COURT. .......................................................................................................... 20

CONCLUSION............................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*360 Campaign Consulting, LLC v. Diversity Commc'n, LLC*,
No. 19-0807, 2020 WL 1320909 (Del. Ch. Mar. 20, 2020) ...................................8, 13, 16, 17

*Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*,
555 F. App'x 153 (3d Cir. 2014) ...................................................................................8, 9, 17

*Allstate Ins. Co. v. Toll Brothers, Inc.*,
171 F. Supp. 3d 417 (E.D. Pa. 2016) ...................................................................................16

*Alta Berkeley VI C.V. v. Omneon, Inc.*,
41 A.3d 381 (Del. 2012) .........................................................................................................8

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
935 F.3d 274 (5th Cir. 2019) .........................................................................................10, 17

*Armor All/STP Prods. v. TSI Prods.*,
337 F. Supp. 3d 156 (D. Conn. 2018) ............................................................................11, 17

*AT&T Corp. v. Faraday Capital Ltd.*,
918 A.2d 1104 (Del. 2007) .....................................................................................................7

*Bel-Ray Co. v. Chemrite (Pty.) Ltd.*,
181 F.3d 435 (3d Cir. 1999).....................................................................................................5

*Blackberry Ltd. v. Nokia Corp.*,
No. 17-0155, 2018 WL 1525797 (D. Del. Mar. 28, 2018) ..................................................5, 6

*Blackmon v. O3 Insight, Inc.*,
No. 20-1014, 2021 WL 868559 (Del. Ch. Mar. 9, 2021) .......................................................11

*CardioNet, Inc. v. Cigna Health Corp.*,
751 F.3d 165 (3d Cir. 2014).................................................................................4, 8, 12, 13, 14

*Chemours Co. v. DowDuPont Inc.*,
No. 19-0351, 2020 WL 1527783 (Del. Ch. Mar. 30), *aff'd,* 243 A.3d 441 (Del.
2020) .......................................................................................................................................18

*E. Tex. Med. Ctr. Reg'l Healthcare Sys. v. Slack*,
916 F. Supp. 2d 719 (E.D. Tex. 2013)....................................................................................7

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)...............................................................................................................13

*Goplin v. WeConnect, Inc.*,
893 F.3d 488 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 810 (2019)............................................6

*Granite Rock, Co. v. Int'l Brotherhood of Teamsters*,
130 S. Ct. 287 (2010)............................................................................................................13

*Guidotti v. Legal Helpers Debt Resol., LLC*,
716 F.3d 764 (3d Cir. 2013)....................................................................................................7

*HealthplanCRM, LLC v. AvMed, Inc.*,
458 F. Supp. 3d 308 (W.D. Pa. 2020).....................................................................................16

*Jaludi v. Citigroup*,
933 F.3d 246 (3d Cir. 2019)................................................................................................5, 7

*James & Jackson, LLC v. Willie Gray, LLC*,
906 A.2d 76 (Del. 2006) ....................................................................................................16, 17

*James v. Nat'l Fin., LLC*,
132 A.3d 799 (Del. Ch. 2016)............................................................................................18, 19

*Kuhn Constr., Inc. v. Diamond State Port Corp.*,
990 A.2d 393 (Del. 2010) ........................................................................................................8

*Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*,
26 F.3d 375 (3rd Cir.), *cert. denied*, 513 U.S. 946 (1994).....................................................12

*Liveware Publ'g, Inc. v. Best Software, Inc.*,
252 F. Supp. 2d 74 (D. Del. 2003)...................................................................9, 10, 11, 12

*Local 827, Int'l Brotherhood of Elec. Workers v. Verizon N.J., Inc.*,
458 F.3d 305 (3d Cir. 2006)......................................................................................................8

*Major, Lindsey & Afr., LLC v. Mahn*,
No. 10-4239, 2010 WL 3959609 (S.D.N.Y. Sept. 7, 2010) ...................................................11

*Mitas Endustri Sanayi Ticaret A.S. v. Valmont Indus., Inc.*,
No. 20-1285, 2021 WL 3169301 (D. Del. July 27, 2021) ......................................................18

*Moon v. Breathless Inc.*,
868 F.3d 209 (3d Cir. 2017)......................................................................................................5

*NASDAQ QMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014)............................................................................................11, 17

*Nidec Corp. v. Seagate Tech. LLC*,
No. 21-0052, 2021 WL 3048456 (D. Del. July 20, 2021) ......................................................18

*Ostreicher v. TransUnion, LLC*,
　　No. 19-8174, 2020 WL 3414633 (S.D.N.Y June 22, 2020) ......................................7

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
　　817 A.2d 149 (Del. 2002), *cert. denied*, 538 U.S. 1032 (2003).........................................13, 14

*Rummel Klepper & Kahl, LLP v. Del. River & Bay Auth.*,
　　No. 20-0458, 2022 WL 29831 (Del. Ch. Jan. 3, 2022).........................................................19

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
　　676 F. Supp. 2d 321 (D. Del. 2009).........................................................................12

*Tulowitzki v. Atl. Richfield Co.*,
　　396 A.2d 956 (Del. 1978) .............................................................................18, 19

*Utilipath, LLC v. Hayes*,
　　No. 9922, 2015 WL 1744163 (Del. Ch. Apr. 15, 2015) .........................................................7

*Vertiv Corp. v. Svo Bldg. One, LLC*,
　　No. 18-1776, 2019 WL 1454953 (D. Del. Apr. 2, 2019).........................................................11

*White v. Sunoco, Inc.*,
　　870 F.3d 257 (3d Cir. 2017)................................................................................3, 5, 6

**Statutes**

17 U.S.C. § 512(c) ..............................................................................................15

Fed. R. Civ. Proc. 12(b)(6) ......................................................................................3

Fed. R. Civ. Proc. 56(a) .........................................................................................3

**Other Authorities**

*Restatement (Second) of Contracts* (Am. L. Inst. 1981).................................................19

## INTRODUCTION

Plaintiff Concept Engineering LLC ("Concept Engineering") hereby opposes Defendant Pinterest, Inc.'s ("Pinterest") Motion to Compel Arbitration and Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Litigation Pending Arbitration (D.I. 13). Pinterest's motion should be denied for multiple reasons, including that Pinterest, Inc. is not party to the most recent version of the asserted Terms of Service ("TOS"), and Concept Engineering's claims—all of which are for injunctive relief—are expressly excluded from arbitration and are otherwise wholly unrelated to and outside the scope of the TOS, including the arbitration provision. While Pinterest seeks to avoid federal litigation and this Court's judgment, Concept Engineering's claims are plainly not subject to arbitration and should proceed in this Court.

## STATEMENT OF FACTS

As alleged in the Complaint, Concept Engineering is an architecture firm based in Estonia that develops and owns a vast collection of architectural works, house plans and renderings that Concept Engineering markets and licenses to customers worldwide. D.I. 1 ¶ 8. Concept Engineering owns the intellectual property rights, including all copyrights, in its architectural works, house plans and renderings, and has registered many of them with the U.S. Copyright Office (registered works referred to in the Complaint and herein as the "Concept Works"). *Id.*

Concept Engineering's copyrighted works are an important and valuable part of its business. *See id*. Concept Engineering utilizes naming conventions, metadata, and backlinks to its website (concepthome.com) to protect and prevent third parties from infringing those works. *Id.* ¶ 11. Concept Engineering also disables the ability to right-click and copy images displayed on its website and displays a message that it is a copyright violation to download images from its website, further protecting its works from third-party copying. *Id.* ¶¶ 9–13.

1

Defendant Pinterest operates an image-based platform, including a website (pinterest.com) and mobile application, where its users are encouraged to create and share content on virtual bulletin boards. *Id.* ¶ 16. Pinterest encourages its users to post or "Pin" content to their boards by either "[u]pload[ing] an image from your computer or mobile device" or "creat[ing] and sav[ing] Pins from images you find online." *Id.* ¶ 19. Pinterest provides its users with various tools to facilitate and encourage posting of third-party content, including mechanisms that circumvent copyright protections. *See id.* ¶ 20. For instance, Pinterest users can download a Pinterest browser button extension, which superimposes a Pinterest logo button over every image online and allows for one click posting to Pinterest, thereby circumventing right-click protections. *Id.* Users can also provide Pinterest with a website's address, and Pinterest then automatically captures the images from that website and allows users to select the images to pin, further undermining efforts to prevent copying. *Id.*

When Pinterest users pin Concept Engineering's works, including the Concept Works, Pinterest creates and stores multiple infringing copies of the pinned image on its server and replaces Concept Engineering's original file names that contain copyright management information ("CMI") identifying the title and owner of the work. *See id.* ¶¶ 11, 43, 44. Pinterest then uses, displays, and distributes these infringing copies to its benefit and in ways that encourage further third-party infringement. *See id.* ¶¶ 39–40; Declaration of Oliver Kangro ("Kangro Decl.") ¶¶ 18–20. For example, Pinterest monetizes these infringing works to retain and attract new Pinterest users, including by displaying and distributing infringing works to users with targeted advertising and using infringing works in online search engine results to direct consumers to Pinterest. *See id.* D.I. 1 ¶¶ 17, 54; Kangro Decl. ¶¶ 18–20.

As a result, Pinterest has set up a platform through which copyright infringement is

encouraged and runs rampant and unhindered. *See* D.I. 1 ¶ 72. Using the tools provided by Pinterest, third parties have created tens of thousands of Pins of Concept Engineering's works, including by circumventing and disabling Concept Engineering's copyright protection mechanisms. *Id.* ¶¶ 35, 37. A massive number of Concept Engineering's works, including the Concept Works, have appeared on Pinterest, posted by third parties without Concept Engineering's permission, and then copied and further distributed by Pinterest. *Id.* ¶ 21.

The extensive infringement of Concept Engineering's works continues. *See* Kangro Decl. ¶¶ 16–17. To this day, Pinterest is publicly displaying infringed copies of Concept Engineering's works on its own site and third-party sites, including Google search results, even after Pinterest claims to have completed DMCA takedowns for the same works. *See id.*

Based on this egregious conduct, the Complaint asserts four claims against Pinterest, Inc. seeking injunctive relief and monetary damages for statutory copyright infringement and DMCA violations. *See* D.I. 1 ¶¶ 57–100; *see also id.* at 25 ("Prayer for Relief"). Concept Engineering's complaint does not reference, invoke, or attach any version of Pinterest's Terms of Service ("TOS"), nor does it reference, relate to, rely upon, or in any way involve Concept Engineering's use of Pinterest's platform. *See generally* D.I. 1.

## STANDARD

Pinterest seeks dismissal under Fed. R. Civ. Proc. 12(b)(6), but because its motion is based on materials outside of the complaint, including declarations and purported TOS, it must be reviewed under the Fed. R. Civ. Proc. 56(a) summary judgment standard. *See White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017). Thus, Pinterest's motion "should only be granted if there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law." *See id.*

In deciding a motion to compel arbitration, the Third Circuit follows a two-step analysis asking the following threshold questions: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall with[in] the language of the arbitration agreement?" *CardioNet, Inc. v. Cigna Health Corp*., 751 F.3d 165, 172 (3d Cir. 2014) (internal quotation and citation omitted). Here, Pinterest's motion fails both steps as set forth below.

## **ARGUMENT**

Pinterest's motion should be denied for several reasons. *First*, Pinterest's motion fails the first step of the analysis because Pinterest, Inc., the defendant in this case, is not a party to the most current version of the asserted TOS, which applies according to its own terms, and thus Pinterest, Inc. cannot compel arbitration based thereon. *Second*, even if Pinterest, Inc. were a proper contracting party, the motion would fail the second step, as Concept Engineering's claims are all "claims for injunctive relief," which are expressly *excluded* from the arbitration provision. *Third*, insofar as any aspect of Concept Engineering's claims were found outside the scope of the exclusion, they clearly and unambiguously fall outside the scope of the arbitration provision, as they do not implicate the TOS in any way and can stand alone without reference to the TOS. *Fourth*, arbitrability may be decided by the Court where, as here, the parties did not clearly and unmistakably agree to arbitrate this dispute. *Fifth*, to the extent that the TOS can be read to cover Concept Engineering's claims, it should be deemed unconscionable as Concept Engineering, the non-drafting party to this adhesion contract, did not have any reasonable expectation that it would be required to arbitrate the asserted claims, which have nothing to do with Concept Engineering's use of Pinterest. *Finally*, the venue provision in the current TOS is limited to disputes "arising from or in connection with" the TOS, which Concept Engineering's claims are not. Thus, the case should remain in this Court, which undisputedly has jurisdiction over

Pinterest, Inc. and Concept Engineering's claims.

## I.  PINTEREST, INC. IS NOT PARTY TO THE TERMS OF SERVICE AND CANNOT ENFORCE THE ARBITRATION PROVISION AGAINST CONCEPT ENGINEERING.

As a threshold issue, Pinterest's motion fails because Pinterest, Inc. is not a party to the most current version of the TOS, and thus no valid arbitration agreement exists between Pinterest, Inc. and Concept Engineering. *See White v. Sunoco, Inc.*, 870 F.3d 257, 265 (3d Cir. 2017) (affirming district court denial of motion to compel arbitration on basis that non-signatory to agreement cannot compel arbitration).[1]

The current version of the business TOS contains a "Parties" provision stating: "*If you live outside North America or South America, these Terms are a contract between you and Pinterest Europe Ltd.*, an Irish company with its registered office at Palmerston House, 2nd Floor, Fenian Street, Dublin 2, Ireland." *See* O'Brien Decl., Ex. A ¶ 15, Pinterest, *Business Terms of Service* (effective Aug. 14, 2020), https://business.pinterest.com/en/business-terms-of-

---

[1] Within the Third Circuit, courts look to state law to resolve issues involving whether an agreement to arbitrate exists and, if so, the scope of that agreement. *See Jaludi v. Citigroup*, 933 F.3d 246, 254–55 (3d Cir. 2019); *White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017) (applying state law to determine the proper contracting party involving arbitration agreement); *Moon v. Breathless Inc.*, 868 F.3d 209, 212–13 (3d Cir. 2017) (state law applies to determine "an arbitration clause's scope"). Here, while the most recent TOS includes a choice of law provision referencing the "laws of England," Concept Engineering proposes that the Court use Delaware law, which would otherwise apply under Delaware choice of law principles. Pinterest did not propose English law, which has no relationship to this dispute, but identified Delaware law as an alternative to California law (which does not apply under the current TOS), further supporting application of Delaware law. *See* D.I. 13 at 10–11 n.4. *See also Blackberry Ltd. v. Nokia Corp.*, No. 17-0155, 2018 WL 1525797, at *2 (D. Del. Mar. 28, 2018) ("Though the Agreement contains a choice of law provision stating that the laws of Sweden govern the Agreement, neither Plaintiff nor Defendants have asserted that Swedish law should apply to the resolution of their dispute. I will therefore apply Delaware contract law.") (citing *Bel-Ray Co. v. Chemrite (Pty.) Ltd.*, 181 F.3d 435, 440–41 (3d Cir. 1999) ("The parties therefore generally carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case…. Where parties fail to satisfy either burden the court will ordinarily apply the forum's law.")).

service/ (last visited Feb. 18, 2022) (emphasis added). To the best of Concept Engineering's knowledge, this term has been included in the business TOS since at least November 1, 2016. *See* O'Brien Decl., Ex. B ¶ 13, Pinterest, *Business Terms of Service* (Effective Nov. 1, 2016), https://web.archive.org/web/20170701013453/https:/business.pinterest.com/en/business-terms-of-service/ (last visited Feb. 18, 2022). Because Concept Engineering is an Estonian company, the TOS would be "a contract between [Concept Engineering] and Pinterest Europe Ltd.," not Pinterest, Inc., the movant-defendant in this case.

This current version of the TOS, adopted on August 14, 2020 (prior to this lawsuit), applies according to its own terms, which state: "We may revise these Terms from time to time and the most current version will always be posted on our website…. By continuing to access or use the Service after revisions become effective, you agree to be bound by the revised Terms." *See* O'Brien Decl., Ex. A ¶ 15; *see also* O'Brien Decl., Ex. C ¶ 13, Pinterest, *Terms of Service* (effective May 1, 2018), https://policy.pinterest.com/en/terms-of-service (last visited Feb. 18, 2022). Because Concept Engineering has continued to access Pinterest's platform in order to police infringing activity, the most current version of the TOS applies, and any contract resulting therefrom would be with Pinterest Europe Ltd., not Pinterest, Inc. *See* O'Brien Decl., Ex. A ¶ 15; Kangro Decl. ¶¶ 6–7.

Thus, because Pinterest, Inc. is not a party to the applicable TOS with Concept Engineering, it cannot compel arbitration against Concept Engineering. *See White*, 870 F.3d at 265; *Blackberry Ltd. v. Nokia Corp.*, No. 17-0155, 2018 WL 1525797, at *3 (D. Del. Mar. 28, 2018) (denying motion to compel arbitration by non-signatory); *see also Goplin v. WeConnect, Inc.*, 893 F.3d 488, 490–91 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 810 (2019) (affirming district court's finding that defendant was not a party to the arbitration agreement and otherwise failed to

6

meet its "burden of establishing its right to enforce the arbitration agreement"). A corporate relationship between Pinterest, Inc. and Pinterest Europe is not sufficient. *E. Tex. Med. Ctr. Reg'l Healthcare Sys. v. Slack*, 916 F. Supp. 2d 719, 722 (E.D. Tex. 2013) (wholly owned subsidiary not permitted to enforce as "corporate relationship alone, however, is generally not sufficient to bind a non-signatory to an arbitration agreement.").

For its part, Pinterest makes no effort to establish that it is the proper contracting party to enforce the arbitration provision and inexplicably references only older versions of the TOS in its brief and supporting declarations. *See* D.I. 13 at 4–8; D.I. 14 ¶¶ 8, 11–18; D.I. 15 ¶¶ 5, 7–10. But according to the clear and unambiguous terms included in each version of the TOS, "the most current version" applies. *See* O'Brien Decl., Ex. A ¶ 15; D.I. 14-1 & D.I. 15-1 (TOS versions attached to Prabasco & Wahlgren Decls); *see also Jaludi,* 933 F.3d at 256 (later employee handbook excluding claims from arbitration supersedes prior version); *Ostreicher v. TransUnion, LLC*, No. 19-8174, 2020 WL 3414633, at *5 (S.D.N.Y June 22, 2020) (applying Delaware law and finding acceptance of revised credit card agreement based on the plaintiff's failure to opt-out, cease use, or close account); *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1108 (Del. 2007) (where contract language is clear and unambiguous, court must give effect to parties' intentions by construing language using ordinary and usual meaning); *Utilipath, LLC v. Hayes*, No. 9922, 2015 WL 1744163, at *4 (Del. Ch. Apr. 15, 2015) (finding that Delaware courts "will give effect to the plain-meaning of the contract's terms and provisions" when the contract is "clear and unambiguous").[2]

---

[2] While Concept Engineering believes that this term involving the contracting Parties and others discussed herein unambigiously show that the claims should remain in this Court and are not subject to arbitration, the Court may order discovery to resolve any ambiguity that it may find. *See Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013).

To allow Pinterest Inc. to enforce the arbitration provision would impermissibly read the "Parties" provision out of the contract. *See 360 Campaign Consulting, LLC v. Diversity Commc'n, LLC*, No. 19-0807, 2020 WL 1320909, at *5 (Del. Ch. Mar. 20, 2020) (holding that defendant's construction of arbitration provision would "impermissibly read [terms] out of the contract, while also expanding the [provision] beyond its plain terms.") (citing *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385–86 (Del. 2012) ("[A] court interpreting any contractual provision … must give effect to all terms of the instrument, must read the instrument as a whole, and, if possible, reconcile all the provisions of the instrument.") (citation omitted)); *CardioNet*, 751 F.3d at 174 ("As we have explained previously, courts are required to read contract language in a way that allows all the language to be read together, reconciling conflicts in the language without rendering any of it nugatory if possible." (internal quotation and citation omitted)).

The claims asserted in the Complaint involve the conduct of Pinterest, Inc., not Pinterest Europe Ltd., the contracting party, and no exceptions apply. Since Pinterest wrote the TOS, it should be held to its terms.[3]

On this basis alone, Pinterest's motion to compel arbitration must be denied.

---

[3] To the extent the Court finds any ambiguity in the TOS, it should be construed against Pinterest. *See Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 397 (Del. 2010) ("If we find ambiguity, we will apply the doctrine of *contra proferentem* and construe ambiguous terms and provisions against the drafting party."); *see also Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 155 (3d Cir. 2014) ("[E]ven were we to conclude that there is some ambiguity in the [arbitration] provision, it does not necessarily follow that the ambiguity must be resolved through arbitration.") (quoting *Local 827, Int'l Brotherhood of Elec. Workers v. Verizon N.J., Inc.*, 458 F.3d 305, 312 (3d Cir. 2006) ("Insofar as the existence of contrary interpretations of the arbitration clause suggests that there may be a modicum of ambiguity in the language of the arbitration clause, we note that a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt.").

## II.   CONCEPT ENGINEERING'S CLAIMS ARE EXCLUDED FROM ARBITRATION AND SHOULD PROCEED IN THIS COURT.

Even if Pinterest, Inc. could enforce the arbitration provision (which it cannot), Concept Engineering's claims are clearly and unmistakably "*excluded*" from arbitration under the TOS because they are all "claims for injunctive or other equitable relief" based on statutory intellectual property violations. *See* O'Brien Decl., Ex. A ¶ 13. The arbitration provision of the TOS expressly "exclude[es] claims for injunctive or other equitable relief," and states that "[n]othing in this Section shall prevent either party from seeking injunctive or other equitable relief from the courts, including for matters related to data security, intellectual property or unauthorized access to the Service." *Id.* Thus, under the clear and unambiguous language of the arbitration provision, these claims are excluded from any agreement to arbitrate. *See Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 155 (3d Cir. 2014) (affirming denial of motion to compel arbitration of injunctive relief claims based on "unambiguous" exception for injunctive relief claims).

Pinterest acknowledges the carve-out, in a footnote, arguing that "[t]he exclusion for injunctive or equitable relief in the arbitration provision … does not remove the question of whether Plaintiff's claims are arbitrable from the sole purview of the arbitrator." D.I. 13 at 16 n.7. But the Third Circuit, this Court, and others have rejected the same argument. *See Aetrex*, 555 F. App'x at 155 (affirming denial of arbitration motion, despite agreement to submit to arbitration "the determination of the scope or applicability of this Agreement to arbitrate," where "the contractual provision was not ambiguous [and thus], there was no meaningful question to refer to the arbiter concerning the scope of the agreement." (internal quotation omitted)).

For instance, in *Liveware*, the only case cited by Pinterest with a similar injunctive relief carve-out, the court agreed that the claims were *excluded* from arbitration. *See Liveware Publ'g,*

*Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 82 (D. Del. 2003) ("The Court agrees that, as Liveware asserts, Liveware had a right, and still has a right, to address such claims [for copyright infringement] to this Court, since the License explicitly excepts them from the matters which must be addressed through alternative dispute resolution."). The provision in *Liveware* invoked the AAA Commercial Arbitration Rules and, like here, covered disputes "arising from, related to or in connection with this Agreement," *yet the Court (not an arbitrator) ruled on arbitrability of claims under the exclusion*. *See id.* at 79–80, 82.

*Liveware* involved a dispute over the alleged breach of a software contract, whether continued use of the software by the defendant following termination of the contract constituted copyright infringement, and whether related communications to customers about the dispute constituted tortious interference. *See id.* at 76–77. The plaintiff acknowledged that its case centered on the contract and relationship arising out of the contract. *See id.* at 80 ("Liveware has with remarkable consistency shown a recognition that, at bottom, this is a commercial dispute centering on the parties' rights under the License."). Nevertheless, the Court found the non-contract claims for copyright infringement outside the scope of the arbitration clause based on the exclusion: "The Court agrees that, as Liveware asserts, Liveware had a right, and still has a right, to address such claims to this Court, since the License explicitly excepts them from the matters which must be addressed through alternative dispute resolution." *Id.* at 82.

Similarly, the Fifth Circuit rejected the argument that an arbitrator should decide the scope of an injunctive relief carve-out on remand from the Supreme Court in the *Henry Schein* case cited repeatedly by Pinterest. There, the Fifth Circuit denied a motion to compel arbitration after determining that, "[g]iven that carve-out, we cannot say that the Dealer Agreement evinces a 'clear and unmistakable' intent to delegate arbitrability." *See Archer & White Sales, Inc. v.*

*Henry Schein, Inc.*, 935 F.3d 274, 281–82 (5th Cir. 2019); *see also Armor All/STP Prods. v. TSI Prods.*, 337 F. Supp. 3d 156, 165 (D. Conn. 2018) (quoting *NASDAQ QMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031–32 (2d Cir. 2014)) ("[E]ven 'a broad arbitration clause' that incorporated AAA rules presented ambiguity as to whether the parties intended to have questions of arbitrability decided by an arbitrator because the clause was 'subject to a qualifying provision that at least arguably covers' the dispute.").[4]

Here, as in the cases above, the Court has the authority to rule on the scope of the carve-out and should find that *all* of the claims are excluded, as they are all "claims for injunctive relief." Indeed, injunctive relief is core to Concept Engineering's requested relief and is imperative because Pinterest continues to violate Concept Engineering's copyrights. *See* Kangro Decl. ¶¶ 12, 16–19, 26. Pinterest not only continues to illegally copy, store, display, and modify Concept Engineering's work without permission, but does so in a way that makes it impossible for Concept Engineering to prevent further infringement. *Id.* ¶ 17. As a result, without injunctive relief, Pinterest and its users will continue to copy Concept Engineering's plans, replacing the need to purchase and license plans from Concept Engineering.[5] *Id.*

---

[4] The other cases cited by Pinterest on this point are inapposite. For instance, unlike here, the arbitration provision in *Blackmon* did not include an express exclusion of claims for injunctive relief, but merely offered a "permissive out," allowing the parties to bring equitable claims either in arbitration or court. *See Blackmon v. O3 Insight, Inc.*, No. 20-1014, 2021 WL 868559, at *3 (Del. Ch. Mar. 9, 2021). Similarly, *Vertiv* involved a different type of carve-out—limited to "matters requiring *immediate* injunctive relief"—and whether a preliminary injunction motion fell within the scope of that term. *See Vertiv Corp. v. Svo Bldg. One, LLC*, No. 18-1776, 2019 WL 1454953, at *1–2 (D. Del. Apr. 2, 2019) (emphasis added). Again, that is unlike the broad, express carve-out excluding all claims for injunctive relief here. Nor does the exclusion in this case include a further carve-out for money damages claims, as in *Major, Lindsey & Afr., LLC v. Mahn*, No. 10-4239, 2010 WL 3959609, at *3 (S.D.N.Y. Sept. 7, 2010) (provision excluding claims for injunctive relief but further stating that, "all other aspects of such claims, including any claims for damages, are covered by this [arbitration] Agreement.").

[5] The Court in *Liveware* determined that the contract claims "ought to be resolved in the first instance" in arbitration because "decisions about the termination rights in the License will

Thus, because Concept Engineering's claims are expressly excluded from arbitration, they should move forward in this Court without delay.

## III. THE ASSERTED CLAIMS DO NOT FALL WITHIN THE SCOPE OF THE TERMS OF SERVICE.

Even without the express carve-out, Concept Engineering's claims should be deemed outside the scope of the arbitration provision and should proceed in this Court. Indeed, Pinterest provides *no explanation* as to how Concept Engineering's claims fall within the scope of the TOS. While Pinterest asserts that it is entitled to make "wholly groundless" arguments in support of arbitration, it must offer some argument as to how the claims are subject to arbitration, which it failed to do here and should not be permitted to do on reply. *See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3rd Cir.), *cert. denied*, 513 U.S. 946 (1994) (holding an issue is waived unless a party raises it in its opening brief and "passing reference" to an issue will not suffice); *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 331 n.13 (D. Del. 2009) (declining to "give determinative weight" to any argument raised in general terms and primarily in reply).

As the Third Circuit has explained, "[i]n the vast majority of cases, the arbitrability of a dispute is a question for judicial determination." *CardioNet*, 751 F.3d at 171; *see also id.* ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear

_____

necessarily affect any determination of whether Best's actions were unlicensed and in violation of Liveware's copyright." *See id.* at 81–82. Further, the plaintiff in that case had already pursued (and lost) multiple motions for injunctive relief. *See id*. at 80–81; *see also id.* at 83 ("[G]iven the circumstances of this case and the arguments the parties have advanced, the Court is satisfied that addressing the termination rights and related contractual issues in arbitration first is the appropriate path forward."). However, the Court in *Liveware* made clear that, in another "set of circumstances," it could "proceed in the first instance to address a claim for injunctive relief." *Id.* at 83. Here, given the express carve-out and compelling need for injunctive relief, Concept Engineering's claims should move forward in this Court in the first instance.

and unmistakable evidence that they did so.") (citing *First Options of Chi., Inc. v. Kaplan*, 514

U.S. 938, 944 (1995) (internal quotation omitted)). "[T]he fact that the parties have agreed to

arbitrate some disputes *does not necessarily manifest an intent to arbitrate every dispute that*

*might arise between the parties* …." *Id*. at 172 (emphasis added). "Accordingly, 'a court may

order arbitration of a particular dispute only where the court is satisfied that the parties agreed to

arbitrate *that dispute*.'" *Id*. (quoting *Granite Rock, Co. v. Int'l Brotherhood of Teamsters*, 130 S.

Ct. 287, 297 (2010) (emphasis in original)).

As the Delaware Supreme Court has explained, "[a]n arbitration clause, no matter how

broadly construed, can extend only so far as the series of obligations set forth in the underlying

agreement." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002),

*cert. denied*, 538 U.S. 1032 (2003); *see also CardioNet*, 751 F.3d at 176 ("the facts underpinning

these direct claims do not concern the performance or interpretation of the parties' Agreement,"

and thus "fall outside the scope of the Agreement's arbitration clause" and may be pursued in

court); *360 Campaign*, 2020 WL 1320909, at *10 n.42 ("Even where an arbitration clause is

determined to be broad, if a cause of action does not touch on contract rights or contract

performance, that claim cannot be arbitrated …."). Thus, "arbitration clauses should be applied

only to claims that bear on the duties and obligations under the Agreement." *Parfi,* 817 A.2d at

156.

Ultimately, whether a dispute falls within the scope of an arbitration clause "depends

upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the

given claim." *CardioNet*, 751 F.3d at 172. The analysis begins by "carefully analyzing the

contractual language in the arbitration clause at issue." *Id.* at 173 (internal quotation and citation

omitted).

13

Here, the asserted arbitration provision covers "any claim, dispute or controversy (excluding claims for injunctive or other equitable relief) arising out of or in connection with or relating to these Terms …." O'Brien Decl., Ex. A ¶ 13. On their face, Concept Engineering's claims and their factual underpinnings do not fall within the scope of this provision—they do not arise from and are not related to or connected with the TOS in any way. Indeed, the claims do not cite or reference the TOS, do not involve a breach of the TOS, and stand on their own without any reference to the TOS. *See* D.I. 1; *CardioNet*, 751 F.3d at 175 (finding claims outside of arbitration provision where "[t]he resolution of these claims does not require construction of, or even reference to, any provision in the Agreement."); *Parfi*, 817 A.2d at 155–57 (finding claims outside the scope of "broad" arbitration provision covering "any dispute, controversy, or claim arising out of or in connection with" an agreement, where the claims "would be independently and separately assertable" from the arbitration agreement).

For instance, the asserted TOS purport to "govern y*our business's access to and use of the Pinterest website, apps, APIs and widgets*...." *See* O'Brien Decl., Ex. A at 1 (emphasis added). However, Concept Engineering's claims do not arise from its "access to and use of" Pinterest platforms. Rather, Concept Engineering's claims arise from and relate to the use of Pinterest platforms by *third parties* that, with Pinterest's encouragement and facilitation, are uploading and posting Concept Engineering's copyrighted works to Pinterest's platforms, and which Pinterest is then further copying and distributing. *See* D.I. 1 ¶¶ 18, 59, 77–100. This conduct would exist regardless of whether Concept Engineering accessed and used the Pinterest platforms. *See CardioNet*, 751 F.3d at 175 ("Theoretically, any OCT manufacturer, whether it had entered into an in-network Agreement with CIGNA or not… and would have a basis for

14

bringing claims identical to the Providers' claims here.").[6]

Similarly, the TOS apply to "User Content," which is defined as "[a]*nything you post or otherwise make available* on Pinterest." O'Brien Decl., Ex. A ¶ 3(a) (emphasis added). Concept Engineering's claims, on the other hand, relate to Concept Engineering's copyrighted works posted *by third parties* (not Concept Engineering) to Pinterest's platforms, Pinterest's conduct in encouraging and facilitating such illegal copying (including through circumvention of Concept Engineering's protection measures), and Pinterest's further copying and distribution of the works. *See* D.I. 1 ¶¶ 18, 59, 77–100. Concept Engineering's claims do not relate to "anything [Concept Engineering] post[ed] or otherwise ma[de] available on Pinterest."[7] *See id.*; O'Brien Decl., Ex. A ¶ 3(a).

Thus, there is no basis for asserting that Concept Engineering and Pinterest intended to arbitrate such claims, which should remain and proceed in this Court. *See* Kangro Decl. ¶ 8 ("I did not understand or intend … that the arbitration clauses in the TOS would cover claims such as the ones asserted in this action and never intended to waive any rights to pursue such claims in court."). Additionally, it does not appear that Pinterest has sought arbitration in similar disputes in the past, indicating that Pinterest also did not believe such claims were subject to arbitration.[8]

---

[6] To be sure, Concept Engineering's claims for DMCA violations are based on Pinterest's statutory obligations, not any contractual obligations under the TOS. *See, e.g.*, D.I. 1 ¶¶ 38, 61 (citing 17 U.S.C. § 512(c)).

[7] Pinterest suggests that it has license to any User Content that Concept Engineering uploaded to Pinterest. But the claims in this case do not involve materials uploaded by Concept Engineering to Pinterest—they involve copyrighted works uploaded by third parties to Pinterest, which Pinterest facilitated and encouraged, and then further copied and distributed, in circumvention of Concept Engineering's technological and CMI protections. *See* D.I. 1 ¶ 18. Concept Engineering has never posted images of its copyrighted works on Pinterest, but only backlinks to Concept Engineering's website. *See* Kangro Decl. ¶ 9.

[8] *See, e.g.*, *Boffoli v. Pinterest, Inc. and DOES 1-5*, Case No. 2:14-cv-01811 (W.D. Wash.); *Davis v. Pinterest, Inc.*, Case No. 4:19-cv-07650 (N.D. Cal.); *Harrington III v. Pinterest, Inc.*, Case No. 20-cv-5290 (N.D. Cal.).

IV.    **THE TERMS OF SERVICE DO NOT CLEARLY AND UNMISTAKABLY DEMONSTRATE THAT ARBITRABILITY OF CONCEPT ENGINEERING'S CLAIMS SHOULD BE DECIDED BY ARBITRATOR.**

Pinterest argues that an arbitrator must determine the arbitrability of Concept Engineering's claim because the TOS incorporates AAA arbitration rules. But many courts have found that incorporation of such rules alone is *not* clear and unmistakable evidence of an agreement to arbitrate arbitrability, where carve-outs or other indicia of contrary intent exist with respect to the claims at issue.

In fact, both Delaware state courts and courts within the Third Circuit and have explained that, "[t]he majority view does not … mandate that arbitrators decide arbitrability in *all* cases where an arbitration clause incorporates the AAA rules." *See James & Jackson, LLC v. Willie Gray*, LLC, 906 A.2d 76, 80–81 (Del. 2006) (emphasis in original) (explaining majority view did not apply to arbitration provision that explicitly carved out exception for arbitration of claims seeking injunctive relief or specific performance in the courts); *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 323 (W.D. Pa. 2020) (explaining that blanket rule whereby incorporation of AAA rules is a sufficiently clear delegation of gateway issues away from court and is "inconsistent with the more nuanced approach directed by the Third Circuit"); *Allstate Ins. Co. v. Toll Brothers, Inc.*, 171 F. Supp. 3d 417, 427 (E.D. Pa. 2016) (explaining Third Circuit precedent adoption of majority view is "not as clear as it seems").

For example, in *360 Campaign*, despite an arbitration provision incorporating the Commercial Rules of the AAA, the court determined that it "must nevertheless decide arbitrability because the Arbitration Provision does not generally provide for arbitration of all disputes." 2020 WL 132090, at *3 (internal quotation omitted). That case involved a similar arbitration provision covering disputes "between Members arising out of or relating to this Agreement." *Id*. And as in this case, the agreement included a provision that non-arbitrable

16

disputes would be "adjudicated by courts, not arbitrators," indicating that the arbitration provision "did not cover 'all disputes' arising from the contract." *Id*. at *4. Further, like here, the agreement included a carve-out for injunctive relief claims. *Id*. at *5. Given these provisions, based on Delaware Supreme Court precedent, the court determined that the arbitration provision "does not require an arbitrator to determine the threshold question of arbitrability." *Id.* (citing, *inter alia*, *Willie Gary,* 906 A.2d at 78).

Other courts have held that even "broad" arbitration clauses incorporating AAA rules presented ambiguity as to whether the parties intended to have questions of arbitrability decided by an arbitrator where the agreement included a clause excluding claims for injunctive relief that "arguably" covered the dispute. *See Armor All/STP Prods*, 337 F. Supp. 3d at 165 (quoting *NASDAQ QMX Grp., Inc.*, 770 F.3d at 1031–32); *see also Henry Schein,* 935 F.3d at 283.

The instant TOS arbitration provision expressly *excludes* claims for injunctive relief, as explained above. *See* O'Brien Decl., Ex. A ¶ 13. It is also limited to disputes "arising out of or in connection with or relating to these Terms," which Concept Engineering's claims are not. *See id*. And it acknowledges that not all disputes must be arbitrated, undercutting any claim that an arbitrator must decide arbitrability. *See id.* ("To the extent any claim, dispute or controversy regarding Pinterest or our Service isn't arbitrable under applicable laws or otherwise: you and Pinterest both agree that any claim or dispute regarding Pinterest will be resolved exclusively in accordance with Section 13 of these Terms.")*.* Thus, because the parties did not clearly and unmistakably agree to arbitrate arbitrability, the Court should decide the arbitrability of Concept Engineering's claims. *See 360 Campaign*, 2020 WL 1320909, at *3–6; *Aetrex*, 555 F. App'x at 155 (finding that, "[b]ecause … the contractual provision was not ambiguous, there was no meaningful question to refer to the arbiter concerning the scope of the agreement," despite

17

"agreement to submit to binding arbitration the determination of the scope or applicability of this Agreement to arbitrate.") (internal quotation omitted).[9]

## V.      THE ARBITRATION PROVISION IS UNCONSCIONABLE IF THE ASSERTED CLAIMS ARE COVERED.

To the extent the Court determines that Concept Engineering's claims are covered by the arbitration provision, that provision should be found unconscionable. Concept Engineering had no opportunity to negotiate the terms of Pinterest's adhesive contract. To the extent Pinterest's arbitration provision could be interpreted to compel arbitration of Concept Engineering's claims, which have nothing to do with the TOS, no rational person in Concept Engineering's position would have accepted it.

Delaware courts may refuse to enforce a contract based on unconscionability where the party with superior bargaining power deprives their weaker counterpart of any meaningful choice and where the terms unreasonably favor the drafting party. *See James v. Nat'l Fin., LLC*, 132 A.3d 799, 814 (Del. Ch. 2016) (citing *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978)). While courts examine both the procedural context of negotiations and the substantive terms of the agreement, "[t]he analysis is unitary," *i.e.*, "if more of one is present, then less of the other is required." *Chemours Co. v. DowDuPont Inc.*, No. 19-0351, 2020 WL 1527783, at *12 (Del. Ch. Mar. 30), *aff'd,* 243 A.3d 441 (Del. 2020) (citing *James*, 132 A.3d at 815)). Additionally, unconscionability is determined at the time the agreement was made and requires consideration of the totality of the circumstances including the provision's setting, purpose, and

---

[9] The recent cases from this Court cited by Pinterest do not include broad injunctive relief carve-outs or other indicia that the parties did not intend to arbitrate arbitrability. *See Mitas Endustri Sanayi Ticaret A.S. v. Valmont Indus., Inc.*, No. 20-1285, 2021 WL 3169301, at *1 (D. Del. July 27, 2021) (citing nondisclosure agreement D.I. 32, Ex. J § 11); *Nidec Corp. v. Seagate Tech. LLC*, No. 21-0052, 2021 WL 3048456, at *2 (D. Del. July 20, 2021) (citing covenant agreement D.I. 15-1, Ex. 1 at 9).

effect. *James*, 132 A.3d at 814 (quoting *Restatement (Second) of Contracts* § 208, cmt. a).

Here, Pinterest's TOS are procedurally unconscionable given that the agreement was a contract of adhesion that Concept Engineering was effectively required to accept. Pinterest correctly concedes that the arbitration agreement was provided as a "take-it-or-leave-it" offer, but maintains that "the fact [does] not render [it] procedurally unconscionable" because Concept Engineering had the opportunity to read the agreement and was not subject to deceptive tactics. *See* D.I. 13 at 17–18. However, that same argument was rejected in *James*, where the court explained that, "[a]ll else equal, the fact that an agreement is a contract of adhesion makes it relatively more likely that the agreement will be found unconscionable." 132 A.3d at 832. Concept Engineering had no option but to accept Pinterest's terms in toto in order to access the platform to police infringement. *See id.* at 833–34 (finding no meaningful choice where plaintiff needed loan from defendant for food and rent). "Walking away" from Pinterest would force Concept Engineering to permit continued illegal copying of its works without recourse.

Regarding substantive unconscionability, to the extent Concept Engineering's claims are subject to arbitration, the allocation of risks and obligations under the TOS would violate the "mores and business practices of the time and place." *See Rummel Klepper & Kahl, LLP v. Del. River & Bay Auth.*, No. 20-0458, 2022 WL 29831, at *14 (Del. Ch. Jan. 3, 2022) ("Under this test, the court will look to see if the terms of the contract were 'atypical in the local business community.'") (quoting *Tulowitzki*, 396 A.2d at 960). Indeed, Concept Engineering's claims have no relationship to the TOS, and Pinterest makes no attempt to explain how Concept Engineering's claims fall within the scope of the TOS. Yet because Concept Engineering is forced to access Pinterest to root out ongoing infringement caused by Pinterest's conduct, Pinterest asserts that Concept Engineering must pursue its claims in arbitration under terms

19

drafted by Pinterest. Such a result should be deemed unconscionable.

## VI.   CONCEPT ENGINEERING'S CLAIMS ARE NOT SUBJECT TO THE TERMS OF SERVICE VENUE PROVISION AND SHOULD REMAIN IN THIS COURT.

Lastly, Pinterest argues that the claims for injunctive relief (and any others not subject to arbitration) should be transferred to the U.S. District Court for the Northern District of California under a venue provision in the TOS. *See* D.I. 13 at 20 (citing Wahlgren Decl. ¶ 9); *see also* D.I. 15 ¶ 9 (quoting Aug. 23, 2013 TOS ¶ 12). But again, Pinterest relies on a venue term from an *earlier version* of the TOS. *See id.* The current version of the venue provision is limited to disputes "*arising from or in connection with this agreement*," and thus does not apply to Concept Engineering's claims as explained above. *See* O'Brien Decl., Ex. A ¶ 14 (emphasis added). Here, as explained above, Concept Engineering's claims *do not* "arise from or in connection with" the TOS and are separately and independently assertable from the TOS.[10] This Court has jurisdiction over the asserted claims and Pinterest (which is incorporated in Delaware), and Pinterest makes no argument to the contrary. Thus, the claims should remain in this Court.

## <u>CONCLUSION</u>

Based on the foregoing, Pinterest's Motion to Compel Arbitration should be denied and Concept Engineering's claims should proceed in this Court.

---

[10] The earlier venue provision expressly excluded actions "not subject to Section 11 (Arbitration)," and thus also would not have applied to the claims asserted here, which are not subject to arbitration as discussed above. *See* Wahlgren Decl. ¶ 9. Further, that earlier provision is permissive (not mandatory), stating merely that the parties to the TOS "agree to submit to the personal jurisdiction" of the referenced courts, without *requiring* that actions be brought there. *See id.*

Dated:  February 21, 2022

/s/ Daniel A. O'Brien
Daniel A. O'Brien (Del. Bar No. 4897)
VENABLE LLP
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone:  (302) 298-3535
Facsimile:  (302) 298-3550
Email:  DAO'Brien@Venable.com

Meaghan H. Kent
Martin L. Saad
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 344-4000
Facsimile:  (202) 344-8300
Email:  MHKent@Venable.com
Email:  MLSaad@Venable.com

*Counsel for Plaintiff Concept Engineering LLC*

**<ins>CERTIFICATE OF SERVICE</ins>**

I, Daniel A. O'Brien, hereby certify that on this 21th day of February, 2022, a copy of the foregoing document was electronically filed with the court and served via CM/ECF, on parties with counsel of record identified on the Court's docket.

*<ins>/s/ Daniel A. O'Brien</ins>*
Daniel A. O'Brien (No. 4897)