**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF DELAWARE**

CONCEPT ENGINEERING LLC,

        Plaintiff,

     v.

PINTEREST, INC.,

        Defendant.

C.A. No. 21-1465 (MN)

<u>**DEFENDANT PINTEREST, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT
OR, IN THE ALTERNATIVE, STAY LITIGATION PENDING ARBITRATION**</u>

OF COUNSEL:

Amy H. Candido
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Suite 330
San Francisco, CA 94105-1126
(415) 947-2000
acandido@wsgr.com

WILSON SONSINI GOODRICH & ROSATI, P.C.
Jennifer A. Ward (#6476)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
jward@wsgr.com

*Counsel for Defendant Pinterest, Inc.*

March 14, 2022

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 1

     I.     THE PARTIES CLEARLY AND UNMISTAKABLY AGREED TO
           ARBITRATE ARBITRABILITY. .......................................................... 1

     II.    THE ARBITRATOR SHOULD DETERMINE WHETHER PINTEREST,
           INC. CAN ENFORCE THE TERMS OF SERVICE AGAINST
           PLAINTIFF ...................................................................................... 4

     III.   THE COURT MAY NOT DECIDE WHETHER PLAINTIFF'S CLAIMS
           ARE WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT. ............. 8

     IV.   THE DELEGATION CLAUSE IS NOT UNCONSCIONABLE. ........................ 9

     V.    THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE ANY
           NON-ARBITRABLE DISPUTES MUST BE BROUGHT IN LONDON. ......... 10

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*360 Campaign Consulting v. Diversity Commc'ns*,
    2020 WL 1320909 (Del. Ch. Mar. 20, 2020)...................................................................3

*Aetrex Worldwide v. Sourcing for You*,
    555 Fed. App'x 153 (3d Cir. 2014)...........................................................................3

*Agence France Presse v. Morel*,
    769 F. Supp. 2d 295 (S.D.N.Y. 2011).......................................................................6

*Allen v. Shutterfly*,
    2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ..........................................................8

*Allstate Ins. v. Toll Bros.*,
    171 F. Supp. 3d 417 (E.D. Pa. 2016) ........................................................................3

*Armor All/STP Prods. v. TSI Prods.*,
    337 F. Supp. 3d 156 (D. Conn. 2018) .......................................................................4

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009).................................................................................................5

*Auromedics Pharma v. Ingenus Pharm.*,
    2021 WL 3048406 (D. Del. July 20, 2021) ...............................................................3

*BAYPO v. Tech. JV*,
    940 A.2d 20 (Del. Ch. 2007).....................................................................................6

*Beture v. Samsung Elecs.*,
    2018 WL 4259845 (D.N.J. July 18, 2018)..................................................................4

*Blackmon v. O3 Insight*,
    2021 WL 868559 (Del. Ch. Mar. 9, 2021)..............................................................2, 8

*Blanton v. Domino's Pizza Franchising LLC*,
    962 F.3d 842 (6th Cir. 2020) .................................................................................1, 2

*Cairo, Inc. v. Crossmedia Servs.*,
    2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ..............................................................10

*Chemours v. DowDuPont*,
    2020 WL 1527783 (D. Del. Mar. 30, 2020) .............................................................4, 9

*Chesapeake Appalachia v. Scout Petroleum*,
    809 F.3d 746 (3d Cir. 2016)......................................................................................1

*Contec v. Remote Sol.*,
    398 F.3d 205 (2d Cir. 2005)......................................................................................8

*Doe v. Massage Envy*,
    2020 WL 7624620 (Del. Sup. Ct. Dec. 21, 2020) ......................................................4, 9

*E. Texas Med. Ctr. v. Slack*,
    916 F. Supp. 2d 719 (E.D. Tex. 2013) .............................................................................7

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc*,
    269 F.3d 187 (3d Cir. 2001) .............................................................................................7

*Geraci v. Uber Techs.*,
    2021 WL 5028368 (Del. Sup. Ct. Oct. 29, 2021) ............................................................4

*GreenStar v. Tutor Perini*,
    2017 WL 715922 (Del. Ch. Feb. 23, 2017) ......................................................................3

*Hadley v. Shaffer*,
    2003 WL 21960406 (D. Del. Aug. 12, 2003) ...............................................................5, 6

*HealthplanCRM v. AvMed*,
    458 F. Supp. 3d 308 (W.D. Pa. 2020) ...........................................................................2, 4

*Henry Schein v. Archer and White Sales*,
    139 S. Ct. 524 (2019) ...............................................................................................1, 4, 8

*In re McGraw-Hill*,
    909 F.3d 48 (3d Cir. 2018)..............................................................................................10

*In re Ring LLC Privacy Litig.*,
    2021 WL 2621197 (C.D. Cal. Jun. 24, 2021) ..................................................................4

*Innovation Inst. v. St. Joseph Health Source*,
    2019 WL 4060351 (Del. Ch. Aug. 29, 2019) ...................................................................3

*Ishimaru v. Fung*,
    2005 WL 2899680 (Del. Ch. Oct. 26, 2005) ....................................................................7

*James v. Nat'l Fin., LLC*,
    132 A.3d 799 (Del. Ch. 2016).........................................................................................10

*Liveware Publishing v. Best Software*,
    252 F. Supp. 2d 74 (D. Del. 2003) ...................................................................................4

*Manetti-Farrow v. Gucci America*,
    858 F.2d 509 (9th Cir. 1988) ..........................................................................................10

*McLaughlin v. McCann*,
    942 A.2d 616 (Del. Ch. 2008).......................................................................................5, 7

*Mohamed v. Uber Techs.*,
    848 F.3d 1201 (9th Cir. 2016) ..........................................................................................3

*Moretti v. Hertz*,
    2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ..................................................................7

*Nidec v. Seagate Tech.*,
    2021 WL 3048456 (D. Del. July 20, 2021) ................................................4, 10

*Noye v. Johnson & Johnson Servs.*,
    765 F. App'x 742 (3d Cir. 2019) ....................................................................7

*Perry v. MLB Adv. Media*,
    2018 WL 5861307 (C.D. Cal. May 30, 2018) ................................................9

*RCM Techs. v. Brignik Tech.*,
    137 F. Supp. 2d 550 (D.N.J. 2001) ...............................................................9

*Rent-A-Center v. Jackson*,
    561 U.S. 63 (2010) ........................................................................................9

*Rummel Klepper & Kahl v. Delaware River & Bay Auth.*,
    2022 WL 29831 (Del. Ch. Jan. 3, 2022) .......................................................10

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ..........................................................................................3

*Steinmetz v. Scholastic*,
    2017 WL 4082681 (D.N.J. Sept. 15, 2017) ..................................................10

*Taylor v. Shutterfly*,
    2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ..............................................4

*Vertiv v. SVO Building One*,
    2019 WL 1454953 (D. Del. Apr. 2, 2019) ....................................................2

*Wells v. Merit Life Ins.*,
    671 F. Supp. 2d 570 (D. Del. 2009) ...........................................................9, 10

*White v. Sunoco*,
    870 F.3d 257 (3d Cir. 2017) ..........................................................................7

**Statutes**

17 U.S.C. §1202(b) ........................................................................................8, 9

**Rules**

AAA Consumer Rule R-37(a) ...............................................................................2

AAA Consumer Rule R-37(c) ...............................................................................2

AAA Consumer Rule R-37(d) ...............................................................................2

AAA Consumer Rule R-44(a) ...............................................................................2

## TABLE OF ABBREVIATIONS

"Br."

Defendant Pinterest, Inc.'s Opening Brief in Support of Its Motion to Compel Arbitration and Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Litigation Pending Arbitration ("Motion to Compel Arbitration"), dated Dec. 24, 2021 (D.I. 13)

"Kangro Decl."

Declaration of Oliver Kangro, dated Feb. 21, 2022 (D.I. 19)

"Opp."

Plaintiff Concept Engineering's Answering Brief in Opposition to Pinterest's Motion to Compel Arbitration, dated Feb. 21, 2022 (D.I. 18)

"Probasco Decl."

Declaration of Ryan Probasco in Support of Defendant Pinterest, Inc.'s Motion to Compel Arbitration, dated Dec. 22, 2021 (D.I. 14)

"TOS"

Pinterest, Inc.'s *Business Terms of Service* (effective Aug. 14, 2020), https://business.pinterest.com/en/business-terms-ofservice/ (last visited Feb. 18, 2022), attached as Exhibit A to the Declaration of Daniel O'Brien, dated Feb. 21, 2022 (D.I. 20-1)

"Wahlgren Reply Decl."

Reply Declaration of Eric Wahlgren in Further Support of Defendant Pinterest, Inc's Motion to Compel Arbitration, dated Mar. 14, 2022

Plaintiff Concept Engineering LLC does not dispute that since 2012, it has assented to Pinterest's Terms of Service containing a valid, binding arbitration agreement.  Kangro Decl. ¶¶5-8.  Plaintiff also does not dispute that the current Business Terms ("TOS"), like each prior version, provides:  "we each agree to resolve any claim, dispute, or controversy (excluding claims for injunctive or other equitable relief) arising out of or in connection with or relating to these Terms through binding arbitration" pursuant to the AAA Rules.  TOS §13.  As such, the parties have agreed to resolve *all* disputes in arbitration, including clearly and unmistakably delegating all gateway arbitrability issues to the arbitrator.  The TOS is explicit:  "The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement."  *Id.*  Thus, under every version of the Terms and the current TOS, the result is the same:  any questions of arbitrability, including whether Plaintiff's claims fall within the scope of the arbitration provision, or whether Pinterest, Inc. can enforce the current TOS against Plaintiff, must be referred to the arbitrator.

## ARGUMENT

## I.     THE PARTIES CLEARLY AND UNMISTAKABLY AGREED TO ARBITRATE ARBITRABILITY.

The TOS incorporates the AAA Rules and states that it is governed by the FAA.  TOS §13.  Under the FAA, parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."  *Henry Schein v. Archer and White Sales*, 139 S. Ct. 524, 527 (2019).  In such circumstances, "a court possesses no power to decide the arbitrability issue."  *Id.* at 529.  Controlling federal precedent is clear that "incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Chesapeake Appalachia v. Scout Petroleum*, 809 F.3d 746, 763 (3d Cir. 2016); *see also Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842,

1

846 (6th Cir. 2020) (noting agreement by "every one of our sister circuits").  Plaintiff argues that

the TOS does not delegate arbitrability to the arbitrator because injunctive relief claims are

"explicitly carved out" of the arbitration clause.  Plaintiff misinterprets the TOS and the law.

      *First*, the TOS does *not* prohibit the parties from seeking injunctive or other equitable

relief through arbitration.  Rather, while requiring arbitration of "any claim, dispute or

controversy (excluding claims for injunctive or other equitable relief) arising out of or in

connection with or relating to these Terms," the TOS requires arbitration of *all claims* and

permits claims for injunctive relief in court or arbitration.  TOS §13.  The TOS emphasizes:

"arbitrators can award the same damages *and relief* that a court can award."  *Id.* (emphasis

added).  After incorporating the AAA Consumer Rules, which explicitly authorize the arbitrator

to grant injunctive and equitable relief,[1] the TOS reiterates:  "Nothing in this Section shall

prevent either party from seeking injunctive or other equitable relief from the courts."  *Id.*  Thus,

the TOS does not explicitly carve-out or exclude claims for injunctive relief from arbitration, it

merely permits the parties to seek injunctive relief in court as well as in arbitration.[2]

---

[1] *See* AAA Consumer Rules at R-37(a), (c), (d); *id.* at R-44(a) (noting that an "arbitrator may grant any remedy, relief, or outcome that the parties could have received in court," including an injunction, and that applications to the court for injunctive relief "is consistent with the agreement to arbitrate and will not be considered a waiver of the right to arbitrate").

[2] Plaintiff's efforts to distinguish *Blackmon v. O3 Insight* and *Vertiv v. SVO Building One* fail as they are based on the incorrect assumption that the TOS includes "an express exclusion of claims for injunctive relief."  Opp. at 11 n.4.  But the court in *Blackmon* noted that "exclusion…for some equitable remedies" did "not preclude equitable relief from being sought via arbitration." 2021 WL 868559, at *2, n.16 (Del. Ch. Mar. 9, 2021).  It concluded the exclusion was "a permissive out, not a limitation on the otherwise-comprehensive jurisdiction of the arbitrator." *Id.* at *3.  In *Vertiv*, because the agreement incorporated the AAA Rules, the court found it had no authority to resolve plaintiff's request for a preliminary injunction, even though the arbitration clause provided:  "Except for matters requiring immediate injunctive relief, all claims, disputes or other matters [will be arbitrated]."  2019 WL 1454953, at *1 (D. Del. Apr. 2, 2019). *HealthplanCRM v. AvMed*, cited by Plaintiff, further demonstrates this point.  458 F. Supp. 3d 308, 326 (W.D. Pa. 2020) ("injunctive relief" and "judicial proceedings" provision "authorizes the parties to obtain *additional* injunctive relief in court…it does not 'carve out' arbitrability").

*Second*, as a contract governed by the FAA, federal precedent is controlling here, not Delaware law as Plaintiff contends.[3]  Yet, even under Delaware law, provisions regarding injunctive and equitable relief—like that in the TOS—have been widely recognized not to create ambiguity regarding the parties' clear and unmistakable intent to arbitrate arbitrability demonstrated by inclusion of the AAA Rules.  *See Innovation Inst. v. St. Joseph Health Source*, 2019 WL 4060351, at *5 (Del. Ch. Aug. 29, 2019); *GreenStar v. Tutor Perini*, 2017 WL 715922, at *6 (Del. Ch. Feb. 23, 2017).[4]  Courts also routinely reject Plaintiff's contention, Opp. at 17, that reference to a court's jurisdiction—here, a forum selection clause—"undercut[s] any claim that an arbitrator must decide arbitrability."  *See, e.g., Mohamed v. Uber Techs.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (finding supposed conflict "artificial" because "[n]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, … obtain a judgment enforcing an arbitration award, [or] obtain other remedies"); *Auromedics Pharma v. Ingenus Pharm.*, 2021 WL 3048406, at *4 (D. Del. July 20, 2021).

*Third*, any possible ambiguity in the TOS is resolved by the parties' *explicit* agreement that "[t]he *arbitrator has exclusive authority* to resolve *any dispute relating to the interpretation, applicability, or enforceability* of this binding arbitration agreement."  TOS §13 (emphasis added).  This clear and unmistakable delegation clause, which *Plaintiff failed to even mention*, is

---

[3] *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984) (the "underlying issue of arbitrability [is] a question of substantive federal law").

[4] Unlike here, the agreement in *360 Campaign Consulting v. Diversity Commc'ns*, 2020 WL 1320909, at *3-4 (Del. Ch. Mar. 20, 2020), cited by Plaintiff, only provided for arbitration of certain disputes while explicitly stating others would be adjudicated by courts.  Plaintiff's other cases are similarly unavailing.  *See Allstate Ins. v. Toll Bros.*, 171 F. Supp. 3d 417, 429 (E.D. Pa. 2016) (no delegation where AAA Rules only included as "fallback" if arbitration could not be conducted under other rules which do not delegate arbitrability); *Aetrex Worldwide v. Sourcing for You*, 555 Fed. App'x 153, 154-55 (3d Cir. 2014) (no delegation where plaintiff sought *only* injunctive relief and agreement excluded "action seeking…[an] injunction").

dispositive; thus, this Court has "no power to decide the arbitrability issue." *Chemours v. DowDuPont*, 2020 WL 1527783, at *8 (D. Del. Mar. 30, 2020); *see also HealthplanCRM*, 458 F. Supp. 3d at 326-27 ("[t]he use of the word 'exclusively' is powerful evidence in demonstrating unmistakable clarity regarding delegation"); *Nidec v. Seagate Tech.*, 2021 WL 3048456, at *2 (D. Del. July 20, 2021); *Geraci v. Uber Techs.*, 2021 WL 5028368, at *2 (Del. Sup. Ct. Oct. 29, 2021); *In re Ring LLC Privacy Litig.*, 2021 WL 2621197, at *6-7 (C.D. Cal. Jun. 24, 2021); *Doe v. Massage Envy*, 2020 WL 7624620, at *3-4 (Del. Sup. Ct. Dec. 21, 2020); *compare with Armor All/STP Prods. v. TSI Prods.*, 337 F. Supp. 3d 156, 164 (D. Conn. 2018) ("no provision explicitly delegating to the arbitrator the decision regarding arbitrability") (cited in Opp. at 11).

In sum, the TOS's combination of *both* an explicit delegation of "exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability" of the arbitration agreement to the arbitrator *and* the incorporation of the AAA Rules is paradigmatic evidence of a clear and unmistakable agreement to delegate arbitrability to the arbitrator. *See, e.g.*, *Beture v. Samsung Elecs.*, 2018 WL 4259845, at *3, 10 (D.N.J. July 18, 2018); *Taylor v. Shutterfly*, 2018 WL 4334770, at *6-7 (N.D. Cal. Sept. 11, 2018).[5]  Thus, the Court should grant Pinterest's motion. *See Henry Schein*, 139 S. Ct. at 529-30.

## II.    THE ARBITRATOR SHOULD DETERMINE WHETHER PINTEREST, INC. CAN ENFORCE THE TERMS OF SERVICE AGAINST PLAINTIFF.

Plaintiff concedes that it assented to Pinterest's Terms, including the arbitration provision, since it first registered for a Pinterest account in 2012.  Kangro Decl. ¶¶5-8.  To avoid

---

[5] Plaintiff's discussion of *Liveware Publishing v. Best Software*, 252 F. Supp. 2d 74, 82-83 (D. Del. 2003), is off-point because, there, the court was not asked to determine whether the parties had agreed to arbitrate arbitrability by including the AAA Rules, only whether Best was entitled to arbitrate the asserted claims. The court determined that the copyright claims could proceed in court after arbitration because the agreement, unlike here, specifically provided that actions for injunctive relief "*shall be* determined by the courts." *Id.* (emphasis added).

arbitration, Plaintiff claims that Pinterest, Inc. is not "the proper contracting party to enforce the arbitration provision." Opp. at 7. This argument has no merit.

Even if Plaintiff's argument that Pinterest, Inc. is not a party to the current TOS is accepted at face value, whether or not Pinterest, Inc. can enforce the arbitration provision is a gateway arbitrability issue *for the arbitrator*. As previously noted, the TOS provides: "The *arbitrator has exclusive authority* to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." TOS §13 (emphasis added). Delaware law (which Plaintiff asks the Court to apply) is clear that "a signatory to an agreement vesting questions of substantive arbitrability to the arbitrator *must* resolve disputes about arbitrability against a non-signatory before the arbitrator." *McLaughlin v. McCann*, 942 A.2d 616, 626 (Del. Ch. 2008) (emphasis added). As such, "[i]t is not unusual for courts to require arbitration of claims involving parties who were not formally parties to an arbitration agreement, a situation that especially arises when affiliates of signatories are subject to or make claims," and "it is harder for signatories to escape arbitration when, as here, the non-signatories consent." *Id.* Thus, the Court should refer this issue to the arbitrator.

In any event, Pinterest, Inc. can enforce the TOS's arbitration provision as a third-party beneficiary or under equitable estoppel. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (finding nonsignatories may enforce arbitration agreements under the FAA where "'traditional principles' of state law allow a contract to be enforced by or against nonparties").

*First*, an arbitrator would find that Pinterest, Inc. can enforce the TOS as a third-party beneficiary. In Delaware, a third-party beneficiary must demonstrate that "the contract was made for the benefit of that third party within the intent and contemplation of the contracting parties." *Hadley v. Shaffer*, 2003 WL 21960406, at *5 (D. Del. Aug. 12, 2003). To make this

determination, the Court looks to the terms of the contract and surrounding circumstances.  *Id.*

Here, the TOS clearly demonstrates an intent to benefit Pinterest, Inc.  For example, the TOS states upfront that the Terms "govern your business's access to and use of the Pinterest website, apps, APIs, and widgets ('Pinterest' or the 'Service')," making plain that the defined term "Pinterest" equates to the Service provided by Pinterest, Inc.  TOS at 1.  The TOS further provides:  "*You grant Pinterest* and our users a non-exclusive, royalty-free, transferable, sublicensable, *worldwide license* to use, store, display, reproduce, save, modify, create derivative works, perform, and distribute your User Content...."  *Id.* §3(b).  Given the definition of Pinterest as the website, apps, APIs, and widgets, and the worldwide scope of the license, the beneficiary of this license grant was clearly the parent Pinterest Inc., not just its European subsidiary, Pinterest Europe Ltd.[6]  *See, e.g., BAYPO v. Tech. JV*, 940 A.2d 20, 28 (Del. Ch. 2007) (finding "common sense" and terms of agreements indicated nonsignatories, who were affiliates of signatories, were bound).  Thus, Pinterest, Inc., which is "undoubtedly intended to receive a benefit" from at least Plaintiff's license, is a third-party beneficiary under the TOS.  *See Hadley*, 2003 WL 21960406, at *5 (finding nonsignatory shareholders were third-party beneficiaries where they were "undoubtedly intended to receive a benefit" from sale of stock contemplated by agreement); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 303 (S.D.N.Y. 2011) (identifying "Twitter's partner and sublicensees" as third-party beneficiaries where content license in Twitter's Terms of Service "necessarily require[d]" defendant to confer rights of use

---

[6] Plaintiff does not and cannot dispute that when it initially agreed to Pinterest's Personal Terms in 2012 and Pinterest's Business Terms in 2013, it knowingly contracted with Defendant Pinterest, Inc.  *See, e.g.*, Probasco Decl. Ex. B (D.I. 14-2) at 1 ("Pinterest's products and services are provided by Pinterest, Inc.").  Those earlier Terms gave Pinterest, Inc. the very same license it benefits from as a third-party beneficiary to the TOS.  *Id.* at 2.

upon them); *Moretti v. Hertz*, 2014 WL 1410432, at \*3-4 (N.D. Cal. Apr. 11, 2014).[7]

*Second*, Plaintiff is equitably estopped from resisting arbitration of its claims against Pinterest, Inc.  Specifically, "courts have bound a signatory to arbitrate 'at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrong to the nonsignatory's obligations and duties in the contract…and [because] the claims were intimately founded in and intertwined with the underlying contract obligations.'"  *Ishimaru v. Fung*, 2005 WL 2899680, at \*18 (Del. Ch. Oct. 26, 2005) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc*, 269 F.3d 187, 201 (3d Cir. 2001)); *see also Noye v. Johnson & Johnson Servs.*, 765 F. App'x 742, 745 (3d Cir. 2019).  In this case, there is undoubtedly a "close relationship" between the Pinterest entities, the TOS, and Plaintiff's claims—in particular, as detailed above, there is only one Pinterest platform, website or service through which Plaintiff alleges its copyrights have been infringed.[8]  *See* D.I. 1 ¶¶16-18.  Further, the copyrighted works allegedly infringed by Pinterest are subject to the "worldwide license" conferred upon "Pinterest and its users" by the TOS.  TOS §3.  Plaintiff expressly gave Pinterest, Inc. this license when it assented to the earlier Terms, and has continued to accede and perform under the same license terms despite the "change in corporate form" indicated in the current TOS.  In addition, the plain language of the arbitration provision is not limited to disputes between Plaintiff and Pinterest Europe Ltd., but encompasses "any claim…arising out of or in

---

[7] Indeed, in its Complaint, Plaintiff alleges that Pinterest, Inc. is synonymous with the Pinterest platform and service.  D.I. 1 ¶16 ("Defendant [Pinterest, Inc.] is an image-based platform").
[8] This "close relationship" distinguishes this case from *White v. Sunoco*, 870 F.3d 257, 265 (3d Cir. 2017), relied upon by Plaintiff, where "Sunoco was not a corporate affiliate of and had no ownership interest in Citibank and vice versa" and the claims against Sunoco did not relate to the terms or obligations of the relevant agreement.  Also, unlike *E. Texas Med. Ctr. v. Slack*, 916 F. Supp. 2d 719, 722 (E.D. Tex. 2013), this is not a situation in which a signatory is attempting to force a nonsignatory to comply with an arbitration agreement to which it never agreed.  *See, e.g.*, *McLaughlin*, 942 A.2d at 626; *Ishimaru*, 2005 WL 2899680, at \*18.

connection with or relating to these Terms." TOS §13. As such, the Court should grant

Pinterest's motion and refer this issue to the arbitrator in accord with the delegation clause.[9]

## III. THE COURT MAY NOT DECIDE WHETHER PLAINTIFF'S CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.

Plaintiff's arguments regarding the scope of the arbitration provision are not relevant to

this motion. In fact, to decide whether the asserted claims are within the scope of the arbitration

clause "would be doing precisely what *Schein* prohibits—deciding arbitrability when the parties

have reserved that decision for the arbitrator." *Blackmon*, 2021 WL 868559, at *2. Even if the

Court were to consider Plaintiff's arguments in this regard—and it should not—Plaintiff's

copyright claims fall squarely within the TOS's arbitration provision. Arguing that its claims

only relate to its copyrighted works posted by third parties to Pinterest, Plaintiff ignores a critical

fact: by posting its copyrighted works to Pinterest, Plaintiff "granted *Pinterest and our users* a

non-exclusive, royalty-free, transferable, sublicensable, worldwide license to use, store, display,

reproduce, save, modify…and distribute" those works on Pinterest.[10] TOS §3(b) (emphasis

added). Because resolution of Plaintiff's claims "undoubtedly will require interpretation of the

parties' agreement"—here, Plaintiff's license to Pinterest[11]—Plaintiff's claims are subject to the

---

[9] *See, e.g.*, *Contec v. Remote Sol.*, 398 F.3d 205, 209 (2d Cir. 2005) (nonsignatory could compel arbitration where "the parties apparently continued to conduct themselves as subject to the [agreement] regardless of change in corporate form"); *Allen v. Shutterfly*, 2020 WL 5517172, at *7 (N.D. Cal. Sept. 14, 2020) (parent company could enforce arbitration clause in Terms of Service that "encompasse[s] all disputes arising from [subsidiary's] services").

[10] The TOS defines "User Content" as "[a]nything that you post or otherwise make available on Pinterest," including "photos, comments, links and other materials." TOS §3(a). Plaintiff's contention that it "has never posted images of its copyrighted works on Pinterest, but only backlinks to [its] website," Opp. at 15, n.7, ignores both the definition of "User Content" in the TOS and the reality that Concept Engineering uploads its copyrighted images to Pinterest when it creates pins on Pinterest comprising "links to images of…its works…that link back to [Plaintiff's] website[.]" Kangro Decl. ¶9; *see* Wahlgren Reply Decl. ¶¶11-12.

[11] For example, Plaintiff's claim for removal of copyright management information ("CMI") will require Plaintiff to prove that Pinterest removed CMI "without the authority of the copyright owner," 17 U.S.C. §1202(b), putting the provision in the TOS that Pinterest may "modify User

TOS's arbitration clause.  *See RCM Techs. v. Brignik Tech.*, 137 F. Supp. 2d 550, 555 (D.N.J. 2001).  Plaintiff cannot avoid its agreement to arbitrate, or the worldwide license it granted to Pinterest and its users, by simply avoiding reference to the TOS.  *See* Br. at 10 n.1.

## IV.   THE DELEGATION CLAUSE IS NOT UNCONSCIONABLE.

Plaintiff argues that the TOS's arbitration provision is unconscionable.  Not only is that wrong, it is irrelevant.  To avoid arbitration of these disputes, Plaintiff would have had to argue that the TOS's *delegation provision* is unconscionable.  *See Rent-A-Center v. Jackson*, 561 U.S. 63, 73 (2010) (finding that unless delegation provision itself is challenged as unconscionable, the court must treat the delegation provision as valid and enforceable under the FAA); *see also Doe*, 2020 WL 7624620, at *4 (noting unconscionability challenge to an agreement with delegation clause is for the arbitrator to decide); *Chemours*, 2020 WL 1527783, at *12-14.  But Plaintiff failed to make such an argument, and, even if it had, the challenge would have failed.

*First*, the delegation provision is not procedurally unconscionable.  Plaintiff did not "lack…meaningful choice" and could have elected not to register for a Pinterest account.  *Wells v. Merit Life Ins.*, 671 F. Supp. 2d 570, 573 (D. Del. 2009); *Perry v. MLB Adv. Media*, 2018 WL 5861307, at *5 (C.D. Cal. May 30, 2018) (plaintiff's option not to sign up for online service demonstrated lack of procedural unconscionability).  Plaintiff was not forced to register for Pinterest in order to protect its copyrights, *see* Wahlgren Reply Decl. ¶¶6-9, and its extensive commercial use of Pinterest demonstrates the fallacy of that argument, *see id.* ¶10.  There is also no "evidence of undue surprise or oppression," as Plaintiff (a sophisticated entity) had notice of the Terms before willingly agreeing to them.  *See Perry*, 2018 WL 5861307, at *5 (hyperlink

---

Content" squarely at issue.  *See* TOS §3(b).  Similarly, as license is a defense to copyright infringement, resolution of Plaintiff's copyright claims will require interpretation of the provisions in the TOS granting Pinterest a "worldwide license" to Plaintiff's User Content.  *Id.*

provided sufficient notice); *compare with James v. Nat'l Fin., LLC*, 132 A.3d 799, 804-5 (Del. Ch. 2016) (unsophisticated plaintiff forced to accept agreement to afford "food and rent").

*Second*, the delegation provision is not substantively unconscionable.  It does not "shock the conscience," *Wells*, 671 F. Supp. 2d at 573, and is not "so one-sided as to be oppressive." *Rummel Klepper & Kahl v. Delaware River & Bay Auth.*, 2022 WL 29831, at *15 (Del. Ch. Jan. 3, 2022).  The delegation provision is a common business practice that is routinely enforced, *see id.; Nidec*, 2021 WL 3048456, at *2, and it should be here.

## V.   THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE ANY NON-ARBITRABLE DISPUTES MUST BE BROUGHT IN LONDON.

This Court does not have jurisdiction over the asserted claims.  Because determination of Plaintiff's claims will require interpretation of the TOS, including the license that Plaintiff granted to Pinterest, Inc. in its copyright works, *see* Section III, Plaintiff's claims belong in arbitration.  To the extent the arbitrator finds that any of Plaintiff's claims are not arbitrable (and she should not), the TOS's forum selection clause requires Plaintiff to litigate all such non-arbitrable "disputes arising from or in connection with this agreement" exclusively in London, England.[12]  TOS §14.

## CONCLUSION

Pinterest respectfully requests that the Court enter an Order compelling arbitration and dismiss Plaintiff's Complaint, or in the alternative, to stay these proceedings pending arbitration.

---

[12] *See Steinmetz v. Scholastic*, 2017 WL 4082681, at *1 (D.N.J. Sept. 15, 2017) (copyright claim within scope of forum selection clause where claim "rests on whether Scholastic acted within the bounds of its license"); *In re McGraw-Hill*, 909 F.3d 48, 67-68 (3d Cir. 2018) (forum selection clause encompassed copyright claims because "the word 'disputes' allows the contract to be implicated by way of an affirmative defense"); *see also Cairo, Inc. v. Crossmedia Servs.*, 2005 WL 756610, at *6 (N.D. Cal. Apr. 1, 2005) ("copyright and trademark claims are within the scope of the forum selection clause" in Terms of Use where "'resolution of the claims relates to interpretation of the contract'") (quoting *Manetti-Farrow v. Gucci America*, 858 F.2d 509, 514 (9th Cir. 1988)).

Dated:  March 14, 2022

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI, P.C.

OF COUNSEL:

Amy H. Candido
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Suite 330
San Francisco, CA 94105-1126
(415) 947-2000
acandido@wsgr.com

*/s/ Jennifer A. Ward*
Jennifer A. Ward (#6476)
222 Delaware Avenue, Suite 800
Wilmington, DE  19801
(302) 304-7600
jward@wsgr.com

*Counsel for Defendant Pinterest, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 14, 2022, I cause the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.


/s/ *Jennifer A. Ward*
Jennifer A. Ward (#6476)

COS.docx