IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CONCEPT ENGINEERING LLC,

        Plaintiff,

v.

PINTEREST, INC.,

        Defendant.

C.A. No. 21-1465-MN

FILED

MAR 2 0 2024

U.S. DISTRICT COURT DISTRICT OF DELAWARE

**MEMORANDUM ORDER**

Pending before the Court is Defendant Pinterest, Inc.'s ("Inc.") renewed motion to dismiss Plaintiff Concept Engineering LLC's ("Concept") Complaint or, in the alternative, to stay this litigation pending arbitration. (D.I. 60, the "Motion"). The Motion has been fully briefed (D.I. 61, 72, 79) and I held argument on January 10, 2024 (hereinafter, "Tr. ___"). For the following reasons, the Motion is GRANTED.[1]

## I.  BACKGROUND

Concept is an architecture firm based in Estonia that develops and owns architectural works, house plans, and renderings that Concept markets and licenses to its customers. (D.I. 1. ¶ 1). Concept owns the copyrights to its works (the "Concept Works") and takes various steps to prevent third parties from infringing them. (*Id.* ¶¶ 9–13).

"Pinterest" is an image-based social media platform ("Pinterest" or the "Service") that encourages its users to post, or "pin," content to the user's "boards." (*Id.* ¶ 16). The Service is

---

[1] The parties consented to my jurisdiction over the Motion, so I have resolved it in a Memorandum Order rather than a Report and Recommendation. (D.I. 78).

jointly operated by Inc., a Delaware corporation headquartered in San Francisco, and Pinterest Europe Ltd ("PEL"), an Irish wholly owned subsidiary of Inc. (D.I. 61 at 3). Concept is a long-time Pinterest user and has accessed the Service consistent with Pinterest's Business Terms of Service ("BTOS"), a document that Pinterest updates periodically. (*Id.* at 5–6).

The most recent version of the BTOS was issued in 2020. (D.I. 63-1, Ex. 3 (the "2020 BTOS")). Under the 2020 BTOS, users like Concept who reside outside the Americas contract with PEL rather than Inc. (2020 BTOS §15) ("If you live outside North America or South America, these Terms are a contract between you and [PEL]."). That is, Inc. is a non-signatory to the 2020 BTOS. Additionally, section 13 of the 2020 BTOS contains an arbitration provision, providing in pertinent part:

> For any dispute you have with Pinterest, you agree to first contact us and attempt to resolve the dispute with us informally. If we need to contact you, we will do so at the email address associated with your Business Account. If Pinterest has not been able to resolve the dispute with you informally, we each agree to resolve any claim, dispute or controversy (excluding claims for injunctive or other equitable relief) arising out of or in connection with or relating to these Terms through binding arbitration or (for qualifying claims) in small claims court.
>
> . . .
>
> You agree that, by agreeing to these Terms of Use, the U.S. Federal Arbitration Act governs the interpretation and enforcement of this provision and that you and Pinterest are each waiving the right to a trial by jury or to participate in a class action. **The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement.**
>
> . . .
>
> Any arbitration will be administered by the American Arbitration Association (AAA) under the Consumer Arbitration Rules then in effect for the AAA except as provided herein.

(2020 BTOS § 13) (emphasis added). "Pinterest" or "Service" is defined the agreement as "the Pinterest website, apps, APIs and widgets." (*Id.* at pin_arb0000747).

Concept initiated this action against Inc. alleging direct and contributory copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA"). (D.I 1). Concept alleges that Inc. facilitates copyright infringement by permitting third-party users to create pins of Concept Works without Concept's authorization. (*Id.* ¶¶ 16-40). Concept explains that the Service then uses, displays, and distributes these infringing copies to its benefit and in ways that encourage further third-party infringement. (*Id.* ¶¶ 39-40). Concept seeks injunctive and monetary relief. (*Id.* at 25-26).

Citing the 2020 BTOS, Inc. filed a motion under Rule 12(b)(6) and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, to compel arbitration and dismiss Concept's Complaint, or in the alternative, to stay this litigation pending arbitration. (D.I. 12). According to Inc., Concept agreed to arbitrate its claims with Inc. when it signed up for a Pinterest account and accepted the 2020 BTOS. (D.I. 12–15). This Court observed that, although those terms contained "an arbitration provision appearing to bind Plaintiff to arbitrate disputes stemming from its use of the Pinterest service . . . it is not apparent that [Concept's] claims stem from or relate to the Terms." (D.I. 27 at 1). As a result, this Court denied Pinterest's motion without prejudice to renew after discovery limited to the issue of whether Concept's claims are arbitrable. (D.I. 27 at 3). Pinterest renewed its Motion under Rule 56. (D.I. 60).

## II.    LEGAL STANDARD

### A. The FAA

"The Federal Arbitration Act reflects the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *In re Remicade (Direct*

*Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Its primary substantive provision says that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It requires that the Court, "upon being satisfied that [an] issue involved in [a] suit or proceeding is referable to arbitration" under an arbitration agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C. § 3.

"A court can compel a party to arbitrate only if the party agreed to arbitration." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 142 (3d Cir. 2022). "A party agrees to arbitrate if (1) "there is a valid agreement to arbitrate between the parties and, if so, (2) . . . the merits-based dispute in question falls within the scope of that valid agreement." *Id.* (quoting *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)). But the "threshold arbitrability question"—whether the arbitrator or the court decides whether the parties must arbitrate—must be resolved first. *Mabe v. OptumRX*, 43 F.4th 307, 326–27 (3d Cir. 2022) (citing *Henry Schein*, 139 S. Ct. at 530). "In other words, courts must figure out whether the parties should arbitrate the question of whether the parties agreed to arbitrate the dispute." *Zirpoli*, 48 F.4th at 141–42. Parties may delegate threshold arbitrability questions to the arbitrator, and courts will conclude they have done so if their agreement so provides by "clear and unmistakable evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019).

### B. Rule 56

A renewed motion to compel arbitration after limited discovery is considered under Rule 56. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). The motion should only be granted if "there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law." *White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009)).

### III.  DISCUSSION

The crux of the parties' dispute is whether non-signatory Inc. can use the 2020 BTOS to compel Concept to arbitration.[2] The parties disagree as to where my analysis should begin. Inc. contends that I must first address arbitrability. In other words, because Concept agreed to be bound by the 2020 BTOS, I must first determine whether the arbitrator, on one hand, or the court on the other, is the appropriate authority to decide if the parties must arbitrate the issue of whether non-signatory Inc. may compel Concept to arbitration. (D.I. 61 at 1, 10; D.I. 79 at 1). Inc. contends that the 2020 BTOS "clearly and unmistakably" delegates this inquiry to the arbitrator. (*Id.*) Concept, however, seems to suggest that I should first consider whether non-signatory Inc. may *enforce* the arbitration agreement and compel Concept to arbitration. (D.I. 72 at 4). Concept also argues that whether a non-signatory can compel arbitration is an issue to be decided by the Court. *Id.*

---

[2] The parties agree that Concept and PEL are parties to the 2020 BTOS. (D.I. 61 at 9; D.I. 18 at 6). Concept does not argue that the 2020 BTOS is not valid.

5

I agree with Inc. In *De Angelis v. Icon Ent. Grp. Inc.*, the United States District Court for the Southern District of Ohio considered the same argument presented by Concept and concluded that it presented a "logical conundrum" because its application would necessarily violate the rule announced by the Supreme Court in *Henry Schein*:

> There is somewhat of a logical conundrum in finding that [Plaintiff] must arbitrate the question of whether she agreed to arbitrate against nonsignatories. There is generally a presumption against delegation that may be overcome only with clear and unmistakable evidence; silence or ambiguity is not enough. Even with a delegation clause, courts must determine whether a contract exists at all. If the nonsignatories are not parties to the contract, then the Plaintiff has no agreement with them.
>
> But to adjudicate whether [plaintiff] is bound to arbitration with parties that she alleges are nonsignatories would be to engage in the type of analysis that the Supreme Court held impermissible in *Henry Schein, Inc. v. Archer & White Sales, Inc.* There the Court opined that once the parties have a delegation clause, "a court possesses no power to decide the arbitrability issue," and that "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." Whether a nonsignatory can enforce the arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant. The parties agreed to delegate such questions to an arbitrator.

364 F. Supp. 3d 787, 796–97 (S.D. Ohio 2019).

The Third Circuit recently endorsed a similar view in *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 141–42 (3d Cir. 2022). There, the plaintiff signed an agreement in which he agreed to arbitrate claims with both a signatory-assignor as well as "past, present or future respective . . . assignees." *Id.* at 142–43. The defendant was a non-signatory assignee, and the parties disputed, *inter alia*, whether the non-signatory assignee could compel arbitration and whether the court or the arbitrator should decide the "threshold arbitrability question." *Id.* Although the district court concluded that the "legality of the assignment issue" disposed of the question of arbitrability

6

because it found that the assignment was improper, the Third Circuit disagreed: "[The non-signatory assignee's] status as a contractual party to the arbitration agreement does not go to the enforceability of the *delegation clause* . . . if the parties to the . . . agreement clearly and unmistakably intended to delegate the issue of enforceability of the contract (or any other issue) to an arbitrator, the challenge to the enforceability of the arbitration agreement must be decided by the arbitrator, not by a court." *Zirpoli*, 48 F.4th at 144–45.

I recognize that well-reasoned courts have come out differently, though I also note that such decisions predate *Zirpoli*. Some courts have found that a delegation clause does not clearly and unmistakably show that a plaintiff agreed to arbitrate arbitrability with non-parties. *See, e.g., GNH Grp., Inc. v. Guggenheim Holdings, L.L.C.*, C.A. No. 19-1932-CFC, 2020 WL 4287358, at *5 (D. Del. July 27, 2020), *report and recommendation adopted*, C.A. No. 19-1932-CFC, 2020 WL 13679908 (D. Del. Aug. 19, 2020) ("The Court, guided by federal caselaw, cannot conclude that there is clear and unmistakable evidence that these parties (Plaintiff on the one hand, and the Non-Signatory Defendants on the other hand) agreed that an arbitrator should decide arbitrability with respect to Plaintiff's claims against them. How could there be such evidence when Plaintiff and the Non-Signatory Defendants have not signed an agreement with each other containing an arbitration provision with respect to any such claims?").

Other courts have determined such inquiry to be a question of enforceability of the delegation clause. *See Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021) ("[W]hether [non-signatory] can enforce the arbitration agreement against [plaintiff] presents a question of arbitrability that Swiger's arbitration agreement delegated to an arbitrator.); *Brittania-U Nigeria Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017) (language of arbitration agreement clearly and unmistakably delegates arbitrability even with regard to two non-signatory defendants

7

against signatory plaintiff); *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (affirming order compelling parties to submit to arbitrator threshold issue of whether non-signatory may use arbitration provision in contract signed by opposing party to compel opposing party to arbitrate: "Whether a particular arbitration provision may be used to compel arbitration between a signatory and a non-signatory is a threshold question of arbitrability."); *Contec Corp. v. Remote Sol. Co., Ltd.*, 398 F.3d 205, 209–11 (2d Cir. 2005) (concluding that signatory to an arbitration agreement must arbitrate dispute against non-signatory because issue of arbitrability itself is subject to a decision by the arbitrator).

Because I am bound to follow precedential authority issued by our Circuit that Concept does not meaningfully distinguish,[3] I conclude that, under *Zirpoli*, whether non-signatory Inc. can compel Concept to arbitration pursuant to the 2020 BTOS is a question of enforceability of the delegation clause, and that question is for the arbitrator to decide if so delegated by "'clear and unmistakable' evidence." *See Robertson v. Enbridge (U.S.) Inc.*, C.A. No. 19-1080, 2020 WL 9211171, at *4 (W.D. Pa. Aug. 4, 2020) (holding that non-signatory defendant's ability "to enforce the arbitration clause is an issue pertaining to the 'interpretation, applicability, [or] enforceability'" of the agreement between plaintiff and a signatory).

Turning to the whether such delegation "clear[ly] and unmistakabl[y]" occurred here, the delegation clause states: "The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." (2020 BTOS § 13). Courts in the Third Circuit have consistently deemed similar language sufficiently "clear and unmistakable" to delegate gateway questions to the arbitrator. *See Scott v. CVS*, No.

---

[3] Inc. argues *Zirpoli* controls (D.I. 61 at 13), but Concept does not address *Zirpoli* in its Answering Brief. Instead, Concept relies on authority that predates *Zirpoli*, including two cases that did not even involve delegation clauses.

22-3314, 2023 WL 3477827, at *2 (3d Cir. May 15, 2023) (noting that provision that arbitrator decides "disputes arising out of or relating to the validity, enforceability or breach of this Agreement" was "sufficient to delegate the question of arbitrability"); *Stanford v. Azzur Grp., LLC*, C.A. No. 23-03017, 2024 WL 921027, at *4 (E.D. Pa. Mar. 4, 2024) (concluding arbitrability delegated to arbitrator via clause providing "[a]ny dispute regarding the nature of this Agreement, its scope or enforceability shall be decided, in the first instance, by the Arbitrator selected in accordance with the JAMS Rules"). Concept cites no authority where such broad language in an arbitration agreement, like that here, compelled a different outcome.

Further, the 2020 BTOS also provides that "[a]ny arbitration will be administered by the [AAA] under the Consumer Arbitration Rules then in effect for the AAA." (2020 BTOS §13). Courts in the Third Circuit routinely conclude that incorporation of AAA rules "constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability" because those rules give the arbitrator the power to rule on "the existence, scope, or validity of the arbitration agreement." *See Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) (explaining that incorporation of the AAA rules "is about as 'clear and unmistakable' as language can get."); *Yellow Soc. Interactive Ltd. v. Ebersole*, C.A. No. 23-352-CFC, 2023 WL 6621416, at *3 (D. Del. Oct. 11, 2023) (noting that language of the AAA's Commercial Arbitration Rule 7(a) incorporated by reference in an arbitration agreement provides clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability); *Blackhawk Network, Inc. v. IdX Corp.*, C.A. No. 22-368-CFC, 2023 WL 3848337, at *3 (D. Del. June 6, 2023) ("[B]y providing in the FMSA that any arbitration would be conducted pursuant to the AAA Commercial Arbitration Rules, which empower arbitrators to determine their own jurisdiction, Blackhawk and idX provided clear and unmistakable evidence of their agreement that gateway disputes over arbitrability would be

resolved by the arbitrator."); *Vertiv Corp. v. Svo Bldg. One, LLC*, C.A. No. 18-01776-RGA, 2019 WL 1454953, at *2 (D. Del. Apr. 2, 2019) (concluding agreement that incorporates the AAA Commercial Rules clearly and unmistakably delegates the issue of arbitrability to the arbitrator). Other than insinuating that the *Vertiv* court got it wrong (D.I. 72 at 13), Concept does not distinguish Inc.'s authority.

Instead, Concept maintains that the 2020 BTOS's "carve-out" provision "excluding claims for injunctive or other equitable relief" requires me, rather than the arbitrator, to determine the threshold issue of arbitrability. (D.I. 72 at 12). Section 13 of the 2020 BTOS provides: "If Pinterest has not been able to resolve the dispute with you informally, we each agree to resolve any claim, dispute or controversy (excluding claims for injunctive or other equitable relief) arising out of or in connection with or relating to these Terms through binding arbitration or (for qualifying claims) in small claims court." BTOS at § 13. Because this carve-out creates an "ambiguity", Concept says, the issue of arbitrability remains with the Court. (D.I. 72 at 14).

I am not persuaded. Concept relies on *Continental Materials, Inc. v. Veer Plastics Priv. Ltd.*, where the United States District Court for the Eastern District of Pennsylvania determined that the threshold question of arbitrability should be answered by the court. C.A. No. 22-3685-MRP, 2023 WL 2795345, at *3 (E.D. Pa. Apr. 5, 2023). The court explained, "[a]lthough the breadth of the arbitration agreement and incorporation of the ICC rules tend to evince the parties' intent to delegate questions of arbitrability to the arbitrators, the inclusion of a provision [permitting a party to seek equitable relief in court] that at least arguably carves out this dispute creates an ambiguity." *Id.* But unlike the clause at issue in *Continental Materials*, the 2020 BTOS gives the arbitrator "*exclusive authority* to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." (2020 BTOS §13)

(emphasis added). The use of the word "exclusively" is "powerful evidence" in demonstrating unmistakable clarity regarding delegation. *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 326 (W.D. Pa. 2020); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (finding "clear and unmistakable" delegation of arbitrability questions where clause provided that arbitrator "shall have exclusive authority to resolve any dispute relating to the ... enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."). And as Judge Andrews held in *Vertiv*, "there is no judicial exception available when a contract makes a clear delegation. Thus, I am entirely without authority to resolve whether I have authority to resolve Plaintiff's request for a preliminary injunction. That issue is for the arbitrator." *Vertiv*, 2019 WL 1454953, at *3. So too here.

* * *

Because I find the 2020 BTOS clearly and unmissably delegates arbitrability to the arbitrator, I will stay this action pending arbitration in accordance with 9 U.S.C. § 3.

## IV.     CONCLUSION

For the reasons set forth above, the Motion is GRANTED.

* * *

NOW THEREFORE, at Wilmington on this 20th day of March in 2024, it is HEREBY ORDERED that:

1.     Defendant's Motion to Stay this Litigation Pending Arbitration (D.I. 60) is GRANTED; and

2.     This case is STAYED pending resolution of Defendant's arbitration before the American Arbitration Association.

Dated: March 20, 2024

_____
Laura D. Hatcher
United States Magistrate Judge